## NATIONAL LIFE & ACCIDENT INS. CO. v. CLARK.

No. 13748.

Court of Civil Appeals of Texas. Dallas.

Nov. 1, 1946.

Rehearing Denied Nov. 29, 1946.

Wm. M. Bates, of Dallas, for appellant.

Geo. K. Holland, of Dallas, for appellee.

BOND, Chief Justice.

The parties will here be designated as in the court below. The National Life & Accident Insurance Company, plaintiff, instituted this suit against defendant Charles J. Clark, the beneficiary named in a policy of life insurance, to cancel the policy issued by it to Aaron J. Clark. The alleged ground for cancellation is that the policy was issued on a false and fraudulent application of the purported insured, to the effect that he was in good health; that he had no doctor; that he had never had any illness and that he had never had heart disease. The defendant negatived the issue, and in cross action sought judgment for the face value of the policy, with penalty, interest and attorney's fees.

The trial was to a jury, and the only question submitted was whether or not Aaron Clark, on the day of the issuance of the policy, was in sound health. The jury answered "Yes." Accordingly, the trial court entered judgment against the plaintiff and in favor of the defendant on his cross action for $449.39.

The point at issue in this appeal, which was properly raised in the court below and presented here, is whether under the uncontroverted facts plaintiff was entitled to judgment for the cancellation of the policy for the misrepresentation of a fact or facts by the applicant material to the risk, regarding his health, physical condition and medical history, inducing execution of the policy.

The facts pertinent to the issue are: The application for the policy was dated April 21, 1943, in which the applicant was asked, and to which he answered, as follows:

"21. Are you in good health?" Answered "Yes." "22. Who is your doctor?" Answered "None." "23. What illness, injury or accident have you ever had? Give details." Answered "None." "25. Have you ever had heart disease * * *? If yes, give particulars." Answered "No." Following the questions and answers, the application contains the explicit declaration of the applicant that the answers to the above questions are complete and true; that the said answers with the declaration form the basis of the insurance contract to be issued thereon, and that the policy granted in pursuance thereof shall be accepted by the applicant subject to the conditions and agreements contained in such policy.

The evidence shows that the application was made to J. B. Laza, a soliciting agent of the insurance company, who forwarded it to the Home Office at Nashville, Tennessee, where it was submitted and, in reliance upon the truthfulness of applicant's answers and the recitals in the application, on May 3, 1943, the executive officials of the insurance company executed and caused to be delivered the policy of insurance, in ignorance of any fact or facts to the contrary. On February 6, 1945, Aaron Clark died, the primary cause of his death being cerebral hemorrhage with hypertensive heart disease as a contributing cause. On April 26, 1945, this suit was filed to cancel the insurance contract because of the fraud perpetrated by the applicant inducing its execution; tendering refund of all premiums paid thereon since its issuance.

The policy, among other things, provides that it "Shall take effect on the date of issue, provided the insured is then alive and in sound health, but not otherwise. * * * The policy constitutes the entire agreement between the parties hereto * * *. All statements made by the insured or on his behalf shall, in the absence of fraud, be deemed representations and not warranties. * * * This policy shall be incontestable two years from the date of issue, except for nonpayment of premiums."

The uncontroverted testimony further shows that on January 12, 1942, Aaron Clark went to Dr. Arthur Paul Gottlich, a physician and surgeon engaged

in the practice of his profession in Dallas, for consultation, medical attention and advice. The doctor, being privileged to refer to his medical history records of his patient, testified that he had treated Clark intermittently ten or twelve times up to the time of his last illness about January 18, 1944. On direct examination, the doctor said that on his first visit, January 12, 1942, his impression, after examining Clark, was that he (Clark) was suffering with hypertensive heart disease with cardiac decompensation, as that term is applied to the failure of the heart to pump blood through the various vessels of the body, so that a certain amount of the fluid parts of the blood escape from the blood vessels and go into surrounding tissues; that, in laymen's terms, cardiac decompensation is a disease of the heart; that by proper treatment it may all disappear; that hypertensive heart disease is that term which is applied to the change that occurs in a heart due to increase in blood pressure; that it is considered a disease of the heart and, if not controlled, leads to cardiac decompensation or heart failure; that the heart disease itself does not produce cerebral hemorrhage, but causes the heart changes and also causes changes in the blood vessels of the brain which result in cerebral hemorrhage. On cross examination, the doctor testified that heart disease in far-advanced cases is easily discernible, the patient's ankles swelling, with difficulty in breathing; otherwise, it would be difficult to determine; that cerebral hemorrhage is not always attributable to heart disease, and a diseased heart does not always cause hemorrhage. The defendant and two other witnesses called by him, testified, in effect, inimically to the testimony of Dr. Gottlich, that from appearance and subjective symptoms Clark was in good health; that he had not been ill or shown any evidence that he had heart disease. However, each testified that he did not know whether or not Clark had heart disease, or that he had a doctor in attendance upon him for any illness; that during the period here involved Clark performed hard manual labor, and his personal appearance and actions indicated that he was in sound health; in brief, the testimony of appellant and his two witnesses raised the issue as found by the jury that Clark was in sound health. Coxson v. Atlanta Life Ins. Co., 142 Tex. 244, 179 S.W.2d 943.

We think the evidence shows that Clark was suffering from some character of illness at and subsequent to the time of his signing the application for insurance, evident by the testimony of Dr. Gottlich and his numerous consultations and treatments received from the doctor. It is inconceivable that one would call upon a physican intermittently, in comparatively short periods of time, for consultation and advice as to his physical condition, if he was not fearful of some physical ailment or disease. Dr. Gottlich diagnosed his trouble as heart disease; the death certificate, which was not impeached, shows that he died of a cerebral hemorrhage caused by heart disease. Undoubtedly, the applicant knew, when he made answer to the questions in his application, that he was furnishing data, on the basis of which the company would decide whether it wished to insure him. The most elementary spirit of fair dealing would seem to require the applicant to make a full disclosure of his medical history. He evidently had some knowledge of his physical ailment and knew that he had received professional services from Dr. Gottlich at the time he contracted for the insurance policy; and that Dr. Gottlich had treated him professionally. The falsity of any of the statements that he was in good health, that he had no doctor, had never had any illness, or had never had heart disease, would, we think, be a material misrepresentation of material facts as to void the policy.

The insurance company had a right to rely on the representations made in the application. The application evidently showed a sound risk for the life insurance. It is inconceivable that, had Clark made truthful answers: That Dr. Gottlich had diagnosed his trouble as heart disease, or that the applicant had consulted the doctor regarding his physical condition, the insurance company would have assumed the risk. The evidence shows that it would not have done so. On the authority of Jackson v. National Life & Acc. Ins. Co.,

Tex.Civ.App., 161 S.W.2d 536 (writ refused), and Aetna Life Ins. Co. v. Shipley, Tex.Civ.App., 134 S.W.2d 342 (writ dismissed judgment correct), no binding insurance contract ever came into existence.

In Jackson v. National Life, supra [161 S.W.2d 538], the opinion quotes with approval from 37 C.J. 463, sec. 179, announcing the rule: "In some jurisdictions the misrepresentation must be both material and fraudulent, but if the answer is untrue, and the matter is material, the insured necessarily knows that it was not true when he made it, the intention to deceive is necessarily implied. Generally, statements as to consultation with or attendance by a physician, whether warranted to be true or not, are regarded as material to the risk, so that if false, whether intentionally fraudulent or made in good faith, a policy issued in reliance therein may be avoided, since insurer's knowledge or ignorance of the fact represented would naturally influence it in making the contract, estimating the degree and character of the risk, or fixing the rate of premuim." And then, in 7 T.J. 912, sec. 20, the doctrine is announced: "Misrepresentation as to a material fact, inducing the execution of the contract, whether innocently made, or with intent to deceive, constitutes a fraud authorizing cancellation where it appears that the person to whom the statement was made had a right to rely thereon, and that he did so to his injury."

The defendant contends that the quoted provision of the policy that "the policy shall take effect on the date of issue provided the insured is then in sound health;" and that, the jury having found that he was in sound health, in absence of request for submission, all other issues are waived. The fallacy of the contention lies in this: Plaintiff's suit is based upon the ground that no binding contract of insurance ever came into existence because of the false statements in the application material to the risk; hence, being false and fraudulent, the statements became warranties, under sec. 4, Art. 4732, R.S. The life insurance company had the undoubted right to require the applicant for insurance to make, and certainly expected him to make, truthful answers to all questions touching his health, physical condition and medical history. "It is upon faith in these answers that the policy is issued, and it is the province of the company to determine the materiality of the questions submitted, the facts disclosed, and facts concealed; for these form the basis for the proposed contract and, if falsified, no contract results, even though a policy issues." Jackson v. National Life & Acc. Ins. Co., Tex.Civ.App., 161 S.W.2d 536, 538 (writ refused). The defendant further contends, perforce of the other quoted provision of the policy—"The policy shall be incontestable two years from the date of issue, except for nonpayment of premiums"—that the policy cannot be forfeited within two years from date of issue. Such is not the intent of the provision. Clearly, the purpose of the provision (in conformity with sec. 3, Art. 4732, R.S., to which article the policy is expressly made to conform) is that after the lapse of two years the policy shall be incontestable except for nonpayment of premiums. In the case of Guardian Life Ins. Co. of Texas v. Galoostian, Tex.Civ. App., 155 S.W.2d 396, 398, 399, the Eastland Court said: "There is no law prohibiting the contest of liability upon a life insurance policy within the contestable period as provided in compliance with said Art. 4732, subd. 3. The right to contest liability within such period exists in the absence of any contract provision on the subject. If the right exists in the absence of such contract provision, then surely, it would seem that the policy may validly declare such right."

So, in the case here, the representations made by applicant regarding his physical condition and medical history were conditions, warranties, precedent to the validity of the contract issued thereon, and the Company, having discovered the falsity of these answers, had a right to repudiate the contract and sue for its cancellation. See Great National Life Ins. Co. v. Hulme, 134 Tex. 539, 136 S.W.2d 602; American Nat. Life Ins. Co. v. Lawson, 133 Tex. 146, 127 S.W.2d 294. This is

unlike a suit to avoid liability on a valid subsisting contract of insurance; the contract had never breathed life because of the legal fraud which induced its execution.

The judgment of the court below is reversed, and judgment here rendered in favor of the appellant cancelling the policy of insurance.