C. J. CLARK V. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY.

No. A-1118. Decided March 19, 1947.
Rehearing overruled April 16, 1947.
(200 S. W., 2d Series, 820.)

*Geo. K. Holland* of Dallas, for petitioner.

It was error for the Court of Civil appeals to hold that there was no controverted issue of fact shown by the evidence, and that fraud was conclusively shown by insured in his representations made in the application for the policy. American Natl. Ins. Co. v. Park, 55 S. W. (2d) 1088; Ferguson v. Parker, 176 S. W. (2d) 768; 20 Tex. Jur. secs. 90-105.

*Read, Lowrance & Bates,* and *William M. Bates,* of Dallas, for respondent.

Respondent having established that false representations were made in the application, there was no duty imposed on it to request the submission of special issues as to those matters. Willeke v. Bailey, 144 Texas 157, 189 S. W. (2d) 477; Benefit Assn. of Ry. Emp. v. O'Gorman, 195 S. W. (2d) 215.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit was brought by The National Life & Accident Insurance Company against Charles J. Clark, beneficiary in a policy of life insurance issued to Aaron J. Clark, to cancel the policy because of fraudulent representations made by the insured in his application for the policy. The defendant filed a cross action for the face value of the policy. Based upon a jury verdict, the trial court entered judgment for defendant for the face value of the policy and for penalty, interest, and attorney's fees. The Court of Civil Appeals reversed the judgment of the trial court, on the ground that the policy never came into existence because of the alleged fraudulent representations made by the insured, and rendered judgment for the insurance company. 197 S. W. (2d) 869.

Petitioner contends .that the Court of Civil Appeals erred: (1) in holding that the evidence presented no controverted issue of fact; (2) in disregarding the facts found by the jury and the trial court, and in substituting its own contrary fact findings; (3) in holding that respondent did not waive and abandon the issues of fraud by failing to request the trial court to submit those issues to the jury; (4) in holding that the policy never became effective as an insurance contract; and (5) in reversing the judgment of the trial court and rendering judgment in favor of respondent. Respondent, on the other hand, contends that the judgment of the Court of Civil Appeals cancelling the insurance policy is correct and should be affirmed, and that the making of false answers by the applicant in his application for insurance, as to health, physical condition, and treatment by a physician, constituted fraud as a matter of law, and it was not incumbent upon respondent to request the submission of any such issue to the jury.

On April 21, 1943, Aaron James Clark signed an application for an insurance policy, which contained the following questions and answers:

"21. Are you in Good Health? Yes.
"22. Who is your Doctor? None.

"23. What illness, injury or accident have you ever had? Give details. None.

"25. Have you ever had heart disease, asthma, tuberculosis, cancer, ulcers, diabetes, fits, kidney disease, syphilis, paralysis, rheumatism, sciatica, vertigo, or any illness or disorder of the brain, lungs, spine or nervous system, or any disease not common to both sexes; or suffered the total or partial loss of a hand, foot, eye, or the use thereof? Are you deformed? Do you use intoxicating liquors, morphine, or other narcotics to excess? If yes, give particulars." Answered, "No."

Aaron J. Clark died February 6, 1945. The primary cause of his death was cerebral hemorrhage, with hypertensive heart disease as a contributory cause.

This suit was brought by the insurance company within the two-year contestable period. Plaintiff alleged that, relying solely upon the representations made in the application, it issued its policy to Aaron J. Clark on May 3, 1943, but that it would not have done so if it had been advised of the insured's physical condition and that he had been previously treated by a physician. It alleged that when the application was signed, as well as when the policy was issued, the insured was not and had not been in good health; that he had been attended by a physician; that he was suffering from hypertensive heart disease and cardiac decompensation; and that he made the misrepresentations fraudulently for the purpose of inducing plaintiff to issue the policy.

Only one issue was submitted to the jury; and in answer to that issue the jury found that on May 3, 1943, Aaron J. Clark was in sound health. No other question was submitted, and no other issue was requested by either party. Plaintiff did not request the submission of any issue on its allegations of fraudulent answers to Questions Nos. 22, 23, and 25, above quoted.

■ The question of whether or not the insured was in "good health" when the policy was issued was a controverted issue of fact to be determined by the jury, and was foreclosed by the findings of the jury. Vann v. National Life & Accident Insurance Co. (Com. App.), 24 S. W. (2d) 347; Coxson v. Atlanta Life Insurance Co., 142 Texas 544, 179 S. W. 943. Where the testimony is conflicting on an issue of fact, appellate courts will not disturb a verdict of a jury when there is competent evidence to support the findings. Ruebeck v. Hunt, 142 Texas 167, 176 S. W. (2d) 738; Fidelity & Casualty Co. v. McLaughlin, 134

Texas 613, 135 S. W. (2d) 955; 3 Tex. Jur., pp. 1093-1097, secs. 767-769.

The controlling question here is whether or not it was incumbent upon the insurance company to secure jury findings on its allegations of fraudulent representations made by the insured in answer to Questions Nos. 22, 23, and 25. Respondent contends that the testimony is undisputed that the insured made false answers to these questions, and that fraud is shown as a matter of law, and it was therefore not necessary to submit such issues to the jury.

██ Uncontroverted questions of fact need not be and should not be submitted to the jury for its determination; but they are proper subjects for peremptory instructions by the court. Southern Underwriters v. Wheeler, 132 Tex. 350, 123 S. W. (2d) 340; American National Insurance Co. v. Green, 96 S. W. (2d) 727; 41 Tex. Jur., p. 1027, sec. 228. But in this case it can not be said that the evidence is undisputed and shows, as a matter of law, that the insured was guilty of fraud in answering the questions above enumerated.

█ The statutes of this State provide what provisions policies of insurance shall contain and what provisions they shall not contain. Articles 4732 and 4733, R. S. 1925. Subdivision 4 of Article 4732 reads as follows: "That all statements made by the insured shall, in the absence of fraud be deemed representations and not warranties."

It is the settled rule that, in order to avoid a policy, false statements must have been made willfully and with design to deceive or defraud. American Central Life Insurance Co. v. Alexander (Com. App.), 56 S. W. (2d) 864; Great Southern Life Insurance Co. v. Doyle, 136 Texas 377, 151 S. W. (2d) 197; Westchester Fire Insurance Co. v. Wagner, 24 Texas Civ. App. 140, 57 S. W. 876 (writ denied). We find no testimony in this record that conclusively shows that the insured knew that he had heart trouble at the time he signed the application for insurance, or that he made the false answers willfully and with the fraudulent intention of deceiving the insurance company and including it to issue the policy.

█ It is also well settled in this State that to avoid a policy of insurance because of misrepresentations, the burden is on the insurer to plead and prove, not only that the answers made by

the insured were false or untrue, but that the insured knew, or should have known, that they were untrue, and that he made them willfully and with the intention of inducing the insurer to issue him a policy. American Central Life Insurance Co. v. Alexander (Com. App.), 56 S. W. (2d) 864; Doyle v. Great Southern Life Insurance Co., 126 S. W. (2d) 735, affirmed 136 Texas 377, 151 S. W. (2d) 197; General American Life Insurance Co. v. Martinez, 149 S. W. (2d) 637; American National Insurance Co. v. Green, 96 S. W. (2d) 727; Provident Life & Accident Insurance Co. v. Flowers, 91 S. W. (2d) 847; 46 C. J. S., Insurance, pp. 435-437, sec. 1319.

The testimony most favorable to the insurance company is that of Dr. Gottlich. He testified that he treated Aaron J. Clark ten or twelve times between January 12, 1942, and January 18, 1944, but did not disclose the number of times he treated the insured prior to April 21, 1943, when the application was signed. He said that the insured suffered from hypertensive heart disease with decompensation during the time he treated him. When asked whether he informed Clark of his illness, the doctor replied that he did not remember whether he told Clark or not, but said, "I am pretty sure I did, because I admitted him to the hospital on that same day (January 12, 1942). * * * I am pretty sure I told him he had a heart ailment." But he also testified that just a few weeks after he first treated Clark he had recovered from the heart ailment. There is nothing to show that the insured was treated by Dr. Gottlich from the time of such recovery until the application was signed.

Respondent called as a witness J. B. Laza, who testified that on April 21, 1943, he was a soliciting agent for respondent, and that on that date he took Aaron J. Clark's application for the insurance policy; that Clark signed the application in his presence, and the application was sent to the home office; that the policy involved in this suit was issued, and he delivered it to Clark; and that at the time of such delivery he did not know the statements made by Clark in his application were false. The following is quoted from respondent's brief:

"On cross-examination, he (Laza) testified as to the height and weight of Clark; that he collected the premiums on the policy; that during the time he collected the premiums and at the time he solicited the insurance he did not see anything that indicated to him that Clark was in bad health and that Clark looked like a man in good health and never complained to him

and that as far as he knew or thought Clark was in good health when he took the application and delivered the policy."

The lay witnesses, those for plaintiff as well as those for defendant, all testified that Clark appeared to them to be in good health, that he was able to do manual labor, and that he had a good appetite. They further testified that Clark never complained of any ailment, and said nothing and did nothing that disclosed to them that he knew he was sick, and never informed them of having been treated by a doctor. We cannot hold, as a matter of law, that such evidence is conclusive that the insured knew he was suffering from heart disease and that he answered Question 25 fraudulently. In a defense based on fraudulent answers of the insured, it is not sufficient merely to show that the answers were untrue; but it must also be shown that the insured knew, or should have known, that they were untrue. Great Southern Life Insurance Co. v. Doyle, 136 Texas 377, 151 S. W. (2d) 197.

■ Since the burden of proof was on the insurance company to establish, by competent and probative evidence, the essential elements of fraud, as alleged in its petition, it was incumbent upon it to obtain a jury finding on those issues. Nixon v. Hirschi, 134 Texas 415, 136 S. W. (2d) 583; Dallas Joint Stock Land Bank v. Harrison, 138 Texas 84, 156 S. W. (2d) 963; American Central Life Insurance Co. v. Alexander (Com. App.), 56 S. W. (2d) 864. The insurance company having failed to request their submission, it waived them. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79;; Johnson v. Miller, 142 Texas 228, 177 S. W. (2d) 249; Rule 279, T. R. C. P.

Respondent insists that the testimony of Dr. Gottlich is undisputed and conclusively established the essential elements of fraud. To this we do not agree. We think the testimony raised a disputed issue, which should have been submitted to the jury.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered March 19, 1947.

Rehearing overruled April 16, 1947.