

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| MIGUEL REYES, | | |
| | § | No. 08-13-00070-CV |
| Appellant, | | |
| | § | Appeal from |
| v. | | |
| | § | 388th District Court |
| NORMA REYES, | | |
| | § | of El Paso County, Texas |
| Appellee. | | |
| | § | (TC # 2006CM6082) |
| | | |
| | § | |

## O P I N I O N

This is an appeal from a final decree of divorce following a bench trial. Miguel challenges the sufficiency of the evidence to support (1) the appointment of Norma as the joint managing conservator with the right to determine the primary residence of the child; (2) the monthly child support awarded; (3) the division of the marital estate; and (4) "reimbursement" to Norma.

### FACTUAL SUMMARY

The couple was married on March 24, 1997 and had three children who at the time of trial were 15, 14, and 9 years of age. No discovery was conducted during the pending of the divorce and neither party filed sworn inventories and appraisements of property. This appeal proceeds without the benefit of findings of fact and conclusions of law. As the petitioner in the court below, Norma testified first. Miguel's counsel asked no questions despite being given an

opportunity for cross-examination. Norma's counsel rested. Miguel's attorney rested without calling a single witness. At that point, Norma's attorney moved to reopen the evidence and the trial court granted the request. Counsel called Miguel. The following exchange ensued:

MR. FLORES: I'll call Mr. Reyes.

MR. ROMAN: Your Honor, may I have one minute -- a chance to visit with my client?

THE COURT: Sure.

MR. ROMAN: May we step outside?

THE COURT: Yes.

*****

Recess taken

MR. ROMAN: I'm sorry, Your Honor. We rest. No witnesses. No testimony.

## STANDARDS OF REVIEW

### *Legal Sufficiency*

When a party challenges the legal sufficiency of the evidence to support an adverse finding on which he did not have the burden of proof at trial, the party must demonstrate that there is no evidence to support the adverse finding. *Wise v. SR Dallas, LLC,* 436 S.W.3d 402, 408 (Tex.App.--Dallas 2014, no pet.); *Thornton v. Dobbs,* 355 S.W.3d 312, 315 (Tex.App.--Dallas 2011, no pet.). An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005). In our

2

review, we must credit favorable evidence if a reasonable trier of fact could and disregard contrary evidence unless a reasonable trier of fact could not. *City of Keller,* 168 S.W.3d at 827; *Wise,* 436 S.W.3d at 408. If more than a scintilla of evidence supports the challenged finding, the legal sufficiency challenge fails. *Wise,* 436 S.W.3d at 408.

### Factual Sufficiency

A factual sufficiency point requires examination of all of the evidence in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 244 S.W.2d at 660; *Worsham Steel Co.,* 831 S.W.2d at 81. The reviewing court cannot substitute its conclusions for those of the jury. If there is sufficient competent evidence of probative force to support the finding, it must be sustained. *Carrasco v. Goatcher,* 623 S.W.2d 769 (Tex.App.--El Paso 1981, no writ). It is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951); *Reynolds v. Kessler,* 669 S.W.2d 801, 807 (Tex.App.--El Paso 1984, no writ). Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *Clark v. National Life & Accident Ins. Co.,* 145 Tex. 575, 200 S.W.2d 820, 821 (1947); *Oechsner v. Ameritrust Texas, N.A.,* 840 S.W.2d 131, 136 (Tex.App.--El Paso 1992, writ denied). In a bench trial, findings of fact are the equivalent of a jury answer to the special issues. *Associated Telephone Directory Publishers, Inc. v. Five D's Publishing Co.,* 849 S.W.2d 894, 897 (Tex.App.--Austin 1993, no writ); *Lorensen v. Weaber,* 840 S.W.2d 644 (Tex.App.--Dallas 1992), *rev'd on other grounds sub nom.; Exxon Corp. v. Tidwell,* 816 S.W.2d 455, 459 (Tex.App.--Dallas

3

1991), *rev'd on other grounds,* 867 S.W.2d 19 (Tex. 1993); *A-ABC Appliance of Texas, Inc. v.*

*Southwestern Bell Tel. Co.,* 670 S.W.2d 733, 736 (Tex.App.--Austin 1984, writ ref'd n.r.e.).

### *Abuse of Discretion Standard*

The term "abuse of discretion" is not susceptible to rigid definition. *Landon v. Jean–Paul*

*Budinger, Inc.,* 724 S.W.2d 931, 934 (Tex.App.--Austin 1987, no writ).   The test for an abuse of

discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate

case for the trial court's action, but whether the court acted without reference to any guiding rules

and principles.   *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985), *cert.*

*denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986), *citing Craddock v. Sunshine Bus*

*Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.--1939, opinion adopted).   Stated

differently, the appropriate inquiry is whether the ruling was arbitrary or unreasonable.   *Smithson*

*v. Cessna Aircraft Company,* 665 S.W.2d 439, 443 (Tex. 1984); *Landry v. Travelers Insurance*

*Co.,* 458 S.W.2d 649, 651 (Tex. 1970).   The mere fact that a trial judge may decide a matter

within his discretionary authority in a different manner than an appellate judge in a similar

circumstance does not demonstrate that an abuse of discretion has occurred.   *Southwestern Bell*

*Telephone Co. v. Johnson,* 389 S.W.2d 645, 648 (Tex. 1965); *Jones v. Strayhorn,* 159 Tex. 421,

321 S.W.2d 290, 295 (1959).

### *Overlapping Standards in the Family Law Context*

An appeal directed toward demonstrating an abuse of discretion is one of the tougher

appellate propositions. Most of the appealable issues in a family law case are evaluated against an

abuse of discretion standard, be it the issue of property division incident to divorce or partition,

conservatorship, visitation, or child support.   While the appellant may challenge the sufficiency

4

of the evidence to support findings of fact, in most circumstances, that is not enough. If, for example, an appellant is challenging the sufficiency of the evidence to support the court's valuation of a particular asset, he must also contend that the erroneous valuation caused the court to abuse its discretion in the overall division of the community estate. In the child support context, an appellant may challenge the sufficiency of the evidence to support a finding of net resources, a finding of the proven needs of the child, a finding of voluntary unemployment or under-employment, or a finding of a material and substantial change in circumstances. Once we have determined whether sufficient evidence exists, we must then decide whether the trial court appropriately exercised its discretion in applying the child support guidelines to the facts established.

We proceed now to the testimony as it relates to Miguel's issues for review.

### RIGHT TO DETERMINE PRIMARY RESIDENCE

In his first issue, Miguel complains of the sufficiency of the evidence to support a finding that it is in the children's best interest for Norma to be awarded the right to determine their primary residence. In support of his argument, he cites only the *Holley* factors. *Holley v. Adams*, 544 S.W.2d 367, 371-372 (Tex. 1976).

Norma testified that the children were living with her and she asked for primary custody. She recounted that Miguel visits the children very little and it would be in the children's best interest if he became more involved. Miguel's entire testimony about the children is as follows:

Q: And you want standard visitation with your children?

A: I'm hoping I get full custody.

Q: You want full custody?

5

A: Yes, sir.

Q: How often have you been seeing them lately?

A: Since I -- recently I've been having problems with my current employment. Somebody called and complained that I had two jobs. And since I didn't do nothing wrong, they changed my schedule. So right now I'm working seven to three.

Q: Seven a.m. to three p.m.?

A: Seven a.m. to three p.m. And I'm getting off of there, and going to my other job. I'm getting off until six or maybe seven, and working on my days off. And before I used to work from 11 to seven, and go to work at the other from eight to three.

Q: So you don't have any time for the children?

A: Right now, no. But if I get custody, I'll quit one job.

In Texas, we presume that joint managing conservator is in the best interest of the children. TEX.FAM.CODE ANN. § 153.131(b). A party seeking sole managing conservatorship must present evidence to rebut the presumption. Miguel's testimony that he wanted "full custody" is tantamount to a request for sole conservatorship, although he did not plead for that relief. Nor did he offer any testimony to rebut the presumption. As for the right to designate primary residency, Miguel's own testimony demonstrates that he is currently unable to care for the children. His plan for the future was speculative at best. Norma testified that the children had been living with her at her residence during the pendency of the divorce while Miguel was living with his mother. Neither Miguel nor his mother testified to living arrangements for the children, sufficiency of the bedrooms, proximity to schools, or plans for after school care. We also note Norma's unrefuted testimony that Miguel was verbally abusive and repeatedly threatened to call the police for things she had done of which he did not approve. It is further noteworthy that the trial court granted the

6

divorce on grounds of cruelty predicated on Miguel's abuse. Because the evidence was both legally and factually sufficient, we overrule Issue One.

## PROPRIETY OF CHILD SUPPORT AWARD

In his second issue, Miguel complains the evidence is legally and factually insufficient to support the child support award. Norma is employed cleaning houses. Miguel works for the Housing Authority and also performs maintenance at Casa Mobile Homes. He admitted earning between $32,000 and $33,000 annually "plus deductions". The trial court admitted into evidence – without objection -- the parties' 2011 joint federal income tax return. Norma testified that Miguel had earned $33,214 that year and that none of her income was included in that figure. She asked the court to base child support on that income and the trial court ordered support in the amount of $690.

In his brief, Miguel complains that the trial court abused its discretion in calculating and ordering payment of child support without evidence of his income independent of Norma's testimony. He also chastises the trial court for calculating the award without evidence of his net income after deductions. He is wrong on both counts.

The Family Code incorporates the Office of the Attorney General's revised tax rates. TEX.FAM.CODE ANN. § 154.061 (West 2014). Miguel admitted to gross annual income of $33,214.[1] Dividing that number by 12, he has gross monthly income of $2767. Applying the tax rates, his net monthly income is $2327.00. Because the parties have three children, child support would properly be based at 30% or $698. Because the undisputed evidence supports the

[1] Miguel's brief argues that the 2011 tax return included Norma's income. Not only did Norma specifically dispute this, the reporter's record does not support this assertion. While Miguel said "that's both incomes", upon further questioning by Norma's attorney, he explained that he worked two jobs and reported both incomes.

calculations performed by the trial court, the support order does not constitute an abuse of discretion. We overrule Issue Two.

## DIVISION OF PROPERTY

In his third issue, Miguel challenges the trial court's division of the marital estate. Specifically, he complains that there was no evidence from which the trial court could determine the value of his 401K, the value of the residence, the amount of insurance proceeds related to roof damages, the amount of the income tax refund, and the cost of CHIP.[2]

### *Value of the 401K*

Norma did not testify about the 401K arising from Miguel's employment with the Housing Authority. Her attorney advised the court that she was seeking one half of the account. Miguel did not mention it either and he certainly was the party possessing information concerning its value. Notably, the trial court divided it equally. While the court could not value it based on the evidence presented, neither could it err in dividing it equally. An equal division would in no way contribute to a disproportionate division.

### *The Value of the Residence and Insurance Proceeds*

Norma testified that the parties had received insurance proceeds of approximately $4,228 for damage to the roof of the home. Miguel did not use the money to fix the roof and instead deposited it into his bank account. According to her, the house is getting worse and leaking because the roof has not been repaired. She introduced into evidence photographs depicting the damage, including unfinished floors, roof damage, ceiling damage, leaks in the duct work, and unfinished walls. When asked whether the home could be sold in that condition, Norma

---

2   In *passim* he mentions that the failure to produce evidence of valuation materially affects the amount of money that Norma should pay him for his interest in, repair and improvements to the house, a matter he neither pled nor produced evidence to support.

8

answered no. She asked that the house be awarded to her as well as the insurance proceeds so that she could proceed with repairs.

Miguel recalled receiving the insurance money for the roof damage, although he could not remember the amount. He admitted that the proceeds were in his bank account. He spoke of his plans to repair the home, but he called them "future plans". Because he routinely provided maintenance on mobile homes -- sheet rock, drywall, tile work -- he could do the repairs himself. But he acknowledged that the house had been in damaged condition for at least six months. He blamed Norma, claiming that he would "start projects, and then somebody starts yelling at me, and I just put my tools away." He did not dispute Norma's testimony that the house was unsaleable nor did he offer an opinion of value. The trial court, having the opportunity to review the pictures of the extensive damage, could have chosen to believe Norma's testimony that the house had no equity value until it was repaired. The court awarded the home and one half of the insurance proceeds for roof damage to Norma.

*The IRS Tax Refund*

Norma testified that the parties had received a 2011 income tax refund of $6,400. She wanted half of it so that she could put it towards additional repairs to the house. Miguel did not mention the refund. The trial court's order divided the 2011 and 2012 refunds equally. Miguel argues that "the evidence was insufficient to support the trial court's orders for reimbursement to Norma Reyes from income tax return." The income tax refund was community property and subject to division. It was not reimbursement for anything. It happened to be in Miguel's possession, and the trial court divided it equally. The 2012 tax return had not yet been filed, but the court ordered an equal division of the refund, if any.

9

*Vehicles*

The record reveals that the parties owned four vehicles: a van, a Chrysler sedan, a 2008 Ford Expedition and a 1999 Ford F150 truck. Miguel testified that the van and the Chrysler "ain't worth anything right now." He wanted both the Expedition and the truck. He did not opine as to value. He admitted the Chrysler belonged to Norma. Norma sought the Chrysler and the truck. The trial court awarded her the two vehicles she requested, one of which had no value. The other was nine years older than the vehicle awarded to Miguel.

*Personal Property*

Norma asked for the furniture in the home. She agreed that Miguel should receive his tools and personal belongings, adding that his tools had more value than anything in the home.

*Analysis*

Norma was awarded the home, the Chrysler sedan, the Ford truck, the furniture, one half of the insurance proceeds for roof repair, one half of the 2011 income tax refund, and one half of Miguel's 401K plan. Miguel received the van, the Expedition, his tools and belongings, one half of the 2011 income tax refund, and one half of his 401K plan. The truck and the Expedition were the only two functioning vehicles -- according to Miguel -- and each spouse received one vehicle of comparable size.[3] With the exception of the home, the remainder of the property was divided equally. Given the broad discretion possessed by the trial court, we cannot say that it abused its discretion in believing Norma's testimony and photographs that the house had no equity due to the extensive damage.

Each party in a divorce proceeding has a responsibility to produce evidence of the value of various properties to provide the trial court with a basis upon which to make the division. *Higgins*

_____

3  We reiterate that Miguel asked for both the Expedition and the F150.

*v. Higgins,* 2000 WL 1757765 *2 (Tex.App.--El Paso, Nov. 30, 2000, no pet.) (No. 08-99-00266-CV ); *Wallace v. Wallace,* 623 S.W.2d 723, 725 (Tex.Civ.App.--Houston [1st Dist.] 1981, writ dism'd). An appellant who does not provide property values to the trial court cannot complain on appeal of the trial court's lack of complete information. *Higgins,* 2000 WL 1757765 *2; *LeBlanc v. LeBlanc,* 761 S.W.2d 450, 452–53 (Tex.App.--Corpus Christi 1988), *writ denied per curiam,* 778 S.W.2d 865 (Tex. 1989).

Here, as in *Capellen v. Capellen*, 888 S.W.2d 539, 543 (Tex.App.--El Paso 1994, writ denied), Miguel was present at trial and testified. He presented no evidence to contradict the values offered by Norma nor did he provide the court with his own values. Miguel cannot now complain on appeal that the values found by the trial court were not supported by sufficient evidence. *Id., citing Collora v. Navarro,* 574 S.W.2d 65, 69 (Tex. 1978); *Mata v. Mata,* 710 S.W.2d 756, 758 (Tex.App.--Corpus Christi 1986, no writ). We overrule Issue Three.[4]

## REIMBURSEMENT

We understand Miguel to argue that the trial court erred in "reimbursing" Norma for unproven costs of CHIP health insurance coverage and the income tax refund. He then conflates his argument to attack the trial court's ruling on the basis that it does not qualify as equitable reimbursement. His arguments far miss the mark. Equitable reimbursement as recognized in common family law parlance was not an issue before the court.

Norma testified that she currently had CHIP health insurance and although she did not know the exact cost, she did have the insurance cards. Miguel did not speak to health care. The

---

4 Miguel does not argue that the division was disproportionate, only that no evidence of value supports the division. We have concluded that the evidence supports the division. We further note that a disproportionate division would not have been an abuse of discretion because the divorce was granted on the basis of cruelty, a finding Miguel does not challenge.

11

trial court ordered Norma to continue coverage under a governmental medical assistance program or health plan for each child. In return, Miguel was to pay Norma medical support, as additional child support, of $113 per month pursuant to TEX.FAM.CODE ANN. § 154.181 (West 2014). The parties were also directed to each pay one half of the unreimbursed medical expenses. The statute mandates that the cost of health insurance coverage for all children may not exceed 9% of the obligor's annual resources as described by § 154.062(b). In turn, that statute mandates the calculation of net resources. As we have explained above, Miguel's monthly net resources are $2327.99. Nine percent of this number equals $209.52. The decree orders monthly medical support of $113. Because Miguel does not challenge the court's calculation, we overrule Issue Four. Having overruled all issues presented, we affirm the judgment of the trial court.

December 10, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

12