**AFFIRMED; Opinion Filed August 20, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00769-CV

### IN RE THE COMMITMENT OF FREDDIE GENE ANDERSON

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-16-1388**

# MEMORANDUM OPINION

Before Justices Francis, Brown, and Stoddart
Opinion by Justice Stoddart

This appeal involves a civil commitment pursuant to the Sexually Violent Predator Act ("SVP Act"). Following a trial, Freddie Gene Anderson was found to be a sexually violent predator as defined in section 841.003 of the Texas Health and Safety Code. The trial court's judgment orders appellant committed until his behavior abnormality changes to the extent he no longer is likely to engage in a predatory act of sexual violence. In four issues, appellant argues the evidence is legally and factually insufficient to support a finding that he has a behavioral abnormality making him likely to engage in a predatory act of sexual violence, the trial court erroneously sustained the State's objection to his closing argument, and the trial court erred by granting a partial directed verdict on the "repeat sexually violent offender" element of the State's case. We affirm the trial court's judgment and order of civil commitment.

BACKGROUND

In enacting the SVP Act, the Texas Legislature found that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.001. It further found that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state. *Id*. To warrant an individual's commitment as a sexually violent predator, the State is required to prove beyond a reasonable doubt that the person is (1) a "repeat sexually violent offender," and (2) suffers from "a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a). A person is a repeat sexually violent offender if he has been convicted of more than one sexually violent offense and a sentence was imposed for at least one of the offenses. *Id*. A "behavioral abnormality" is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2).

In August 2016, the State filed a petition alleging appellant is a repeat sexually violent offender who suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. The State sought to have appellant committed for treatment and supervision in accordance with chapter 841. The case against appellant proceeded to trial on April 10, 2017. The evidence shows appellant has four convictions for sexually violent acts against two children. The judgments from the criminal cases are included in the record. After the close of evidence, the trial court granted the State's motion for partial directed verdict, declaring appellant a "repeat sexually violent offender." *See id*. § 841.003. The remainder of the case was submitted

to a jury, and the jury unanimously concluded appellant is a "sexually violent predator" as defined by the Act. *Id.* The trial court entered final judgment and issued an order of commitment based on the jury's verdict.

DISCUSSION

## A. Sufficiency of the Evidence

In his first and second issues, appellant challenges the legal and factual sufficiency[1] of the evidence supporting the finding that he has a behavioral abnormality making him likely to engage in a predatory act of sexual violence. We review the legal sufficiency of the evidence using the appellate standard of review for criminal cases. *In re Commitment of Rodriguez*, No. 05-17-00514-CV, 2018 WL 3387363, at *2 (Tex. App.—Dallas July 12, 2018, no pet. h.); *In re Commitment of Dever*, 521 S.W.3d 84, 86 (Tex. App.—Fort Worth 2017, no pet.) (citing *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We assess the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the elements required for commitment under the SVP Act beyond a reasonable doubt. *Dever*, 521 S.W.3d at 86. When reviewing the factual sufficiency of the evidence to support the civil commitment order, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Id.*; *see In re Commitment of Rodriguez*, 2018 WL 3387363, at *2.

At the time of trial, appellant had four convictions for aggravated sexual assault of a child and was an inmate in the Texas Department of Criminal Justice. Before his incarceration, he

---

[1] Factual sufficiency review has been abandoned in criminal cases in which the burden of proof is beyond a reasonable doubt, *see Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), but the Beaumont Court of Appeals, which until recently handled the bulk of SVP Act appeals, has continued to perform a factual sufficiency review. *See In re Commitment of Day*, 342 S.W.3d 193, 206–13 (Tex. App.–Beaumont 2011, pet. denied) (explaining that as an intermediate appellate court, it has a constitutional duty to review factual sufficiency when the issue is raised on appeal; that the Texas Supreme Court, not the Court of Criminal Appeals, construes the Texas constitution as it is applied in civil cases; and that it would continue to apply the factual sufficiency review until the Texas Supreme Court overrules or distinguishes its binding precedent); *see also Dever*, 521 S.W.3d at 86.

–3–

admitted himself into a hospital for treatment of depression and alcohol abuse. He testified at trial that he is not an alcoholic and no longer desires alcohol. During the treatment program, appellant told his therapy group about his prior sexual contacts with children. He believed he had a sexual addiction at that time and "kind of wanted to" have sex with children. While hospitalized, appellant contacted the police and reported he sexually assaulted two children.

Appellant sexually assaulted his 11-year-old niece ("Niece") when he was 24 years old. Appellant first assaulted Niece while he was babysitting her. Appellant testified that after her brothers went to bed, Niece climbed into his lap and "we started kissing. And then the next thing I know, I took - - went into her bedroom and started kissing. There wasn't much talking. We just - - she said she wanted to, and me and her [sic] had sex." After that incident, appellant believed he was involved in a romantic relationship with Niece and she was his girlfriend.

At later dates, appellant fondled Niece and forced his finger into her vagina. He told police in a statement he would "try to get her off," put his penis into her vagina on multiple occasions, penetrated her anus with his penis, and performed oral sex on her. He told police he "made love to her all night long." These actions gave him an "adrenaline rush." He was sexually aroused by the sexual contact with Niece and he believed it was consensual. Although appellant knew his actions were wrong, he continued because Niece did not tell him to stop. Appellant testified: "All she had to do is say don't do it, stop, leave me alone." He believed he initiated all sexual contact with Niece and acknowledged he had difficulty controlling his behavior "[t]o a certain point."

When appellant testified a second time as part of his defense, he stated he knows a child can never consent to sexual contact and his prior testimony that he did not stop assaulting Niece because she did not tell him to was "a bad thinking error." He no longer would say he wants a child to be his girlfriend.

–4–

Appellant eventually decided he wanted a relationship with another adult. He began dating Ann who had a two-year-old daughter ("B"). Appellant lived with Ann and B and had a sexual relationship with Ann. He sexually assaulted B. Appellant answered affirmatively when asked: "[Y]ou had access to an age-appropriate sexual partner, but you instead turned to a child for sexual gratification; is that correct?"

Appellant testified he "wasn't really sexually attracted" to B. He tickled and kissed B and he took a bath with B, which he found sexually arousing. He fondled her vagina and put his finger into her vagina because he "was hoping to get a rush" and sexually arouse B. He tried to force his penis into her vagina, but her vagina was too small. When asked to explain why he believed he could have vaginal intercourse with a two-year-old, appellant explained he "was off in my own little world and thinking this might work . . . but it didn't work out." He knew his actions were wrong and speculated he abused B because Ann cheated on him.

After assaulting the two girls, appellant felt "excited, aroused . . . elated . . I felt good for a while." But then he became depressed and abused alcohol. Appellant eventually realized he is "a sick son-of-a gun." He needed to "quit drinking, quit doing the act" and "get away from that behavior of acting out." He acknowledged he was unable to control his behavior. Appellant pleaded guilty to four counts of aggravated sexual assault of a child for the offenses against Niece and B. He was convicted on all counts and sentenced to 25 years' imprisonment.

Appellant testified that while incarcerated he "straightened my life out a whole lot." He does not believe he is sexually attracted to children anymore, although he was in the past. He conceded he had sexual thoughts about children and masturbated to sexual thoughts about children while in prison, but testified he stopped "[m]aybe five years ago." He does not believe he is a sex offender, but thinks sex offender treatment will help keep him "on the straight and narrow." He can control his behavior through group therapy, church, and people who help him "get my life

back on track when I do get out." He does not think he needs to stay away from children because he can control himself around children. He does not believe he will commit sexual assault in the future, but concedes it is possible.

Tim Proctor, Ph.D., a forensic psychologist, evaluated appellant to determine whether he has a behavioral abnormality making him likely to engage in predatory acts of sexual violence. Proctor reviewed records relating to appellant's sex offenses, including police reports, appellant's prior statements, court documents showing adjudication of guilt and the sentences imposed; prison disciplinary records and evaluations; sex offender treatment records; the transcript from appellant's deposition; and statements made by appellant to another psychologist. He also interviewed appellant on October 13, 2016.

Appellant told Proctor he had sexual contact with four children. In addition to Niece and B, when appellant was fifteen years old, he fondled a seven-year-old female neighbor. When appellant was twenty-six years old, he fondled his six-year-old nephew's penis while the nephew was asleep. Proctor testified the incident with the nephew was significant because "those who have a history of at least one male victim tend to be at a higher risk for re-offending." Additionally, Proctor testified it was a "very strong research factor" that appellant assaulted children not related to him. People who assault non-relatives are at a higher risk for reoffending because the potential victim pool is larger.

Proctor testified that although appellant believed Niece was interested in him and was his girlfriend, records indicate "she was scared of him, she worried that he would hurt her." Niece "rearranged her bed to try to protect herself from him . . . she was not at all interested and was scared of him." Proctor explained: "This kind of distorted thinking about victimizing a child is part of what contributes to sexual offending. Seeing an 11-year-old child as being interested in sex, being like a girlfriend, distorting how the offending really happened. That kind of mindset

increases a person's risk for sexual reoffending." Proctor believed appellant had not changed his thinking process and needed additional sex offender treatment. Proctor explained appellant's statement he would have stopped assaulting Niece if she told him to is "very problematic and distorted. . . he is still not getting it. . . A lot of really important things . . . are just still not making sense to him the way they have to."

Appellant told Proctor he no longer has sexual fantasies and thoughts about children. However, when confronted with his own prior statement to a different psychologist that he does fantasize about children, appellant said "well, if it's in writing, then it must be true." In his deposition, appellant stated he fantasized about children while in prison, but stopped doing so five years earlier. Other statements by appellant indicated he continued having fantasies, but was endeavoring to stop them.

Proctor administered a PCLR test, a psychopathy instrument, and concluded appellant is not a psychopath. He also administered the Static-99R, which is an actuarial risk assessment specific to sex offenders and measures the risk factors specific to sex offending. Appellant scored a two, which is in the average range. Proctor noted the Static-99R does not consider the victims' ages.

Proctor testified appellant's attraction to small children is a sexual deviancy called pedophilia disorder. Appellant's history of offending includes prepubescent children, including B who was "extraordinarily young," and that "is a highly sexually deviant offense and the entire history, victim history, indicates significant strong sexual deviancy in terms of pedophilia being sexually attracted to prepuberty kids." Proctor also diagnosed appellant with borderline intellectual functioning and alcohol use disorder that is in sustained remission in a controlled environment. Anderson's below-average level of intellectual functioning impacts his ability to benefit from sex offender treatment and change his manner of thinking.

Proctor discussed additional risk factors for a behavioral abnormality, including employment history, substance abuse, and relationship history. A person such as appellant who has not maintained stable employment is more likely to reoffend, probably because poor employment history is an indicator of instability. A history of substance abuse is a risk factor. Proctor stated: "[A]lcohol is a real problem with people when it comes to offending, including sexual offending, because it loosens them up, dis-inhibits them to act on something that they might otherwise resist. And so, what you find is that substance use, including alcohol use, if you have a problem with that, that is a risk factor." Appellant's history of alcohol abuse was strongly associated with committing sex offenses. Appellant's relationship history also was "problematic" both for intimate and non-intimate relationships. When a person with pedophilia does not have stable adult friendships and romantic relationships, the person is more susceptible to his interest in children. People, such as appellant, who have not had long-term live-in romantic relationships for at least two years are more likely to re-offend. Appellant also lacks a strong support system. He does not have a lot of people who would take care of him, support him, "stand[] behind him and work[] with him."

To a limited extent, Proctor considered that appellant was sexually abused as a child. Some research indicates that people who were abused as children are more likely to abuse a child.

Proctor testified appellant has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Appellant is part of the small but dangerous group of sex offenders that the statute targets. Proctor testified appellant has a "strong interest in children and acted on it when in the free world." Even though he has been incarcerated, he continues having sexual thoughts about children, "and even masturbate [sic] about those." While he has undergone some treatment, he has not progressed well and it has not been enough. "[A]s he sits here today,

he is still a person who has a history of acting out against prepuberty children, an interest in those children, and who is at significant risk for engaging in that type of behavior in the future."

Some protective factors that Proctor considered are appellant's age and sex offender treatment. As a person ages, the risk of reoffending, particularly sexually reoffending, declines. Completing a treatment program also reduces the risk of reoffending. Appellant is about 52 years old and was enrolled in a sex offender treatment program when Proctor interviewed him. However, the protective factors of age and participation in a treatment program do not outweigh the strength of the risk factors, which is high. Proctor believed that, at the time of trial, appellant still "has serious difficulty controlling his behavior" based on his history, sexual fantasies about children, and masturbation about those fantasies. Proctor believed appellant continued to be sexually attracted to children. Proctor did not believe the pedophilia would resolve itself, and appellant continued suffering from the disorder at the time of trial. While appellant's age would reduce the risk he would reoffend, "it's certainly not anywhere near to the point that [pedophilia] is not present."

According to Proctor, appellant's testimony that he thinks he could be around children shows a lack of self-awareness, which increases his risk and makes him likely to engage in a predatory act of sexual violence. Proctor considers appellant a high risk because "he is someone with a very strong level of sexual deviancy that is demonstrated in the past and there's [sic] still indications of it now. He's got a history that involves multiple offenses involving children, and he still has not reached a point where he understands the extent of it with the risk involved."

Although appellant argues on appeal that the evidence is insufficient because Proctor concluded he is not a psychopath and he only scored a two on the Static-99R, the jury also heard ample evidence that appellant has a condition that predisposes him to commit another sexually violent offense to the extent he is a menace to the health and safety of another person. *See* TEX.

HEALTH & SAFETY CODE ANN. § 41.002(2). The jury, as the sole judge of the credibility of the witnesses and the weight to be given to their testimony, could weigh this evidence and draw reasonable inferences from basic to ultimate facts. *See In re Commitment of Brown*, No. 05-16-01178-CV, 2018 WL 947904, at *9 (Tex. App.—Dallas Feb. 20, 2018, no pet.) (mem. op.). Viewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found appellant suffers from a behavioral abnormality and is a sexually violent predator beyond a reasonable doubt. *See Dever*, 521 S.W.3d at 86. Likewise, the verdict does not reflect "a risk of injustice that would compel ordering a new trial." *Id.* We overrule appellant's first and second issues.

## B. Objection in Closing Argument

In his third issue, appellant argues the trial court abused its discretion by sustaining the State's objection to his closing argument and then instructing the jury to disregard. The following exchange occurred during appellant's closing argument:

> [Appellant's counsel]: We heard that he's not a psychopath. The one thing that the statute mandates has to be addressed because we're looking for predators, that small but dangerous group of sexual offenders. And we heard over and over again that pedophilic disorder is not the same thing as behavioral abnormality.
> Rick factors. Static-99 addresses 10 risk factors, 10 risk factors that the researchers find are the most predictive. He scored a "2" out of a possible "12," giving him the average score. And that doesn't address sexual violent offenses, which this statute is looking for; it addresses all sexual offenses. So, he has an average risk to commit any sex offense, not just sexually violent offenses.
> Psychopathy. Dr. Proctor scored him a "14" out of "40" - -
> [State's counsel]: Your honor, I'm going to object to the misstatement that psychopathy is required testing under the law. That is a misstatement of Chapter 841.
> THE COURT: I'll sustain the objection.
> Disregard the first part of that, the only test required by the law.

Appellant asserts that by sustaining the State's objection, the trial court "essentially ruled that Chapter 841 does not require [testing for psychopathy] contrary to the plain and clear language in Section 841.023(c) [sic] that requires such testing."

Section 841.023(a) states the Texas Department of Criminal Justice shall assess whether a person suffers from a behavior abnormality that makes the person likely to engage in a predatory act of sexual violence. TEX. HEALTH & SAFETY CODE ANN. § 841.023(a). The department must use an expert to examine the person. *See id.* "The expert shall make a clinical assessment based on testing for psychopathy, a clinical interview, and other appropriate assessments and techniques to aid the department in its assessment." *Id.* The statute does not only mandate testing for psychopathy. By its plain language, it also requires a clinical interview and "other appropriate assessments and techniques to aid the department in its assessment." *See id.* Therefore, we cannot say the trial court abused its discretion by sustaining the State's objection to appellant's argument that the "one thing that the statute mandates" is testing for psychopathy. Additionally, we note appellant has not argued or shown he was harmed by any alleged error by the trial court. *See* TEX. R. APP. P. 44.1(a) (reversible error in civil cases). We overrule appellant's third issue.

## C. Directed Verdict

In his fourth issue, appellant argues the trial court erred by granting a directed verdict on the "repeat sexually violent offender" element of the State's case because he was entitled to a jury trial on this issue. Appellant argues there is a conflict between the Texas Rules of Civil Procedure, which allow for a directed verdict, and the SVP Act, which requires the jury to find beyond a reasonable doubt that a person is a sexually violent predator. Appellant asserts that because the SVP Act requires a criminal burden of proof, the Legislature did not intend for trial courts to grant directed verdicts. He does not challenge the evidentiary support for the directed verdict.

Pursuant to Chapter 841, a defendant in a sexually violent predator case "is entitled to a jury trial on demand." TEX. HEALTH & SAFETY CODE ANN. § 841.061(b). Although the burden of proof in a civil commitment proceeding is beyond a reasonable doubt, civil commitment proceedings remain subject to the rules of civil procedure. *Id.* § 841.146(b) (except as otherwise

provided, civil commitment proceeding subject to rules of procedure and appeal for civil cases). Those rules expressly provide for directed verdicts. *See* TEX. R. CIV. P. 268.

In civil cases, a party has a right to a jury trial to determine questions of fact. *Id.* However, "[u]ncontroverted questions of fact need not be and should not be submitted to the jury for its determination." *Clark v. Nat'l Life & Accident Ins. Co*., 145 Tex. 575, 200 S.W.2d 820, 822 (1947); *see City of Keller v. Wilson*, 168 S.W.3d 802, 815 & n.52 (Tex. 2005); *In re Commitment of Harris*, 541 S.W.3d 322, 330 (Tex. App.—Houston [14th Dist.] 2017, no pet.). A partial directed verdict is a procedure for removing parts of a civil case from the jury when there are no fact issues to resolve. *Johnson v. Swain*, 787 S.W.2d 36, 36 n.1 (Tex. 1989); *Harris*, 541 S.W.3d at 330. Partial directed verdicts may be granted on the question whether a person is a repeat sexually violent offender because the SVP Act is civil, not punitive. *See In re Commitment of Hood*, No. 01-16-00866-CV, 2018 WL 1633330, at *3 (Tex. App.—Houston [1st Dist.] Apr. 5, 2018, pet. filed); *Harris*, 541 S.W.3d at 330 (citing *In re Commitment of Fisher*, 164 S.W.3d 637, 645–53 (Tex. 2005)); *In re Commitment of Talley*, 522 S.W.3d 742 (Tex. App.—Houston [1st Dist.] 2017, no pet.). We conclude the trial court did not err by granting a partial directed verdict on the issue of whether appellant is a repeat sexually violent offender. We overrule appellant's fourth issue.

## CONCLUSION

We affirm the trial court's judgment and order of civil commitment.

/Craig Stoddart/

CRAIG STODDART
JUSTICE

170769F.P05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

IN RE: THE COMMITMENT OF
FREDDIE GENE ANDERSON

No. 05-17-00769-CV

On Appeal from the 15th Judicial District
Court, Grayson County, Texas
Trial Court Cause No. CV-16-1388.
Opinion delivered by Justice Stoddart.
Justices Francis and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 20th day of August, 2018.