

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF VERNON LEE DOWNING, DECEASED. | § | No. 08-14-00030-CV |
| | § | Appeal from |
| | § | Probate Court No. 3 |
| | § | Dallas County, Texas |
| | § | (TC#PR-10-2214-3-12 and #12-68585) |
| | § | |

**O P I N I O N**

When Vernon Lee Downing died in 2010 and granted his second wife, Ruth June Downing, a life estate in his house, cars, and IRA, he likely did not suspect that she, his children, and the bank holding the mortgage would become involved in a complicated dispute involving foreclosure, a will contest, and accusations of fraud and waste of estate assets. In the end, the probate court declared the will Vernon signed in 2000 was valid and the life estate it granted had terminated, allowed the bank to foreclose on the house, ordered Ruth June Downing to turn over the cars and IRA to the children, and awarded the children $135,000 in damages and attorney's fees. Ruth June Downing appeals. We affirm in part and reverse and render in part.

**FACTUAL AND PROCEDURAL SUMMARY**

Vernon Lee Downing died on May 23, 2010. He was survived by his second wife, Appellant Ruth June Downing, and by his four children, the Appellees Denise Downing, Katrina

Fling (Downing), and Resa Downing, and another child, Devona Menix (Downing). Appellees Denise, Katrina, and Resa filed an application to admit to probate Vernon's will dated February 23, 2000, which the probate court admitted as a muniment of title on July 19, 2010. Vernon's will devised to Ruth Downing his automobiles, IRA, and house "for so long as she lives in the house and does not cohabit with any other man," and provided that "[i]n either of these occurrences, the house and automobiles shall be immediately sold and the IRA account liquidated … and the net proceeds will be divided equally among my four daughters[.]" Ruth Downing, claiming the estate was governed by a subsequent will, filed a petition for bill of review and a motion to set aside the judgment admitting the 2000 will to probate. No action was taken on these contested matters.

On August 2, 2012, Appellee Bank of America filed an original petition in Dallas district court to foreclosure its lien on Vernon's residence in Garland, Texas. Denise, Katrina, and Resa appeared and filed an answer, a counterclaim against the Bank, and a cross-claim against Ruth Downing.[1] Ruth Downing and Devona Menix (Downing) failed to appear and answer. The Bank, Denise, Katrina, and Resa filed an agreed motion to transfer the foreclosure case to the probate court as required by law, and the district court signed an agreed order transferring the case to the probate court on January 23, 2013.

After the transfer, Denise, Katrina, and Resa filed a motion to deem admissions that had previously been served on Ruth Downing in the original probate proceeding. The admissions were deemed admitted by order of the probate court dated March 1, 2013. On August 1, 2013, the Bank filed a motion for default judgment on its foreclosure claim.

---

[1] Neither the Bank's original petition nor the answer/counterclaim/cross-claim appears in the record on appeal.

A bench trial was held by the probate court on all matters on August 27, 2013. Ruth Downing did not appear at trial. The deemed admissions were submitted into evidence, and the probate court took judicial notice of the court's entire file. The only witness at trial was Katrina Fling, who testified briefly concerning the matters contained in her affidavit, which was admitted into evidence. Katrina testified that her affidavit concerned some of the damages sustained by her and her sisters "as a result of Ms. Downing's failure to comply with a lot of different things[.]"

Katrina's affidavit stated that Ruth Downing terminated her life estate on September 28, 2011, when she moved from the residence without notice to the children listed as remaindermen in Vernon's will. Her affidavit stated that on that date, Vernon's Cadillac Sedan Deville had a fair market value of $8,000, his GMC Sierra pickup had a fair market value of $23,000, Vernon's IRA had a fair market value of $18,000, and the residence had a fair market value of $123,000 with a mortgage of approximately $98,000, leaving a net equity of $25,000, all of which should have been transferred to the remaindermen.

As to fraud, Katrina's affidavit stated that Ruth Downing vacated the residence on September 28, 2011, without notice, and defaulted on the mortgage payments, thereby "wasting an asset of the estate and knowingly and intentionally perpetrating fraud on the remaindermen," and that Ruth had someone living in the house who had not paid the mortgage or rents to the estate or the remaindermen. The affidavit also stated that Ruth Downing "purportedly transferred" the Cadillac Sedan Deville after Vernon's death, at a time Vernon could not have signed the title or transfer document and when the probate proceedings showed the owners of the vehicle were Katrina, Denise, Resa, and Devona. The affidavit then states: "Damages for Fraud – $100,000.00."

The probate court signed an "Agreed Judgment and Default Judgment" on August 27, 2013. The judgment recited that Ruth Downing failed to appear and answer in the foreclosure suit although duly cited, and failed to continue her suit in the probate case, and "wholly made default." In the foreclosure action, the court granted foreclosure to the Bank on its lien on the residence, finding that the Bank, Denise, Katrina, and Resa had agreed to the foreclosure, while all the other interested parties to the foreclosure had defaulted by failing to appear and answer.

In the probate action, the court denied Ruth Downing's petition for bill of review and motion to set aside and decreed that Vernon's February 23, 2000 will previously admitted to probate as a muniment of title was confirmed and declared to be Vernon's last will. The court decreed that pursuant to Paragraph III of the will,[2] Ruth Downing's life estate terminated on September 28, 2011, when she stopped living in the residence without notice to the remaindermen, and that under the terms of the will, the residence, and the Cadillac Sedan Deville, the GMC Sierra pickup, and Vernon's IRA "or the fair market value of same ($50,000.00)," were now jointly owned by Denise, Resa, Katrina, and Devona.

The court ordered that pursuant to the terms of the will, the two vehicles be sold and that Vernon's IRA be liquidated, and that the net proceeds be divided equally between the four children. The judgment stated that "[i]n the event the vehicles have been sold to third parties and the Individual Retirement Account depleted, … judgment is hereby given to [the four children] for the fair market value of the Cadillac Deville Sedan and GMAC [sic] pickup truck in the amount of … $50,000[.]"

---

[2] Paragraph III gave Ruth Downing the automobiles, IRA, and house "for so long as she lives in the house and does not cohabit with any other man," and provided that "[i]n either of these occurrences, the house and automobiles shall be immediately sold and the IRA account liquidated … and the net proceeds will be divided equally among my four daughters[.]"

The judgment awarded $25,000 to Denise, Katrina, Resa, and Devona because Ruth Downing as life tenant had failed to keep up the mortgage payments, taxes, and insurance on the residence and thereby committed waste as to that estate asset. The judgment also decreed that Ruth Downing "had committed fraud" and awarded $100,000 "for such fraud" to Denise, Katrina, and Resa. Finally, the judgment awarded Denise, Katrina, and Resa "reasonable attorney's fees" of $10,000.

## DISCUSSION

Ruth Downing brings essentially six issues on appeal.[3] She contends the trial court abused its discretion in taking judicial notice of its entire file, that there was no evidence to support a finding of waste, that Appellees cannot recover actual damages because they agreed to the foreclosure on the residence, that awarding both actual damages and a monetary award for fraud violated the one-satisfaction rule, that the judgment is not definite and thus not final, and that there is no evidence of attorney's fees.[4]

*Finality of the Judgment*

---

[3] Downing sets out eight issues in her brief, but Issue I states only the general proposition that a judgment cannot properly be rendered if there is no evidence to support liability or damages, and Issue II states the general proposition that on appeal from a non-jury trial in which the court does not make findings of fact, an appellant must attack all implied findings of fact that could support the judgment.

[4] Downing states in her brief that she was not served with the foreclosure suit, that she did not receive the motion to deem admissions, that she was not notified of the trial, and that the certificate of last known address was deficient. Downing filed a motion for new trial asserting that she did not receive notice of trial. Although Downing's brief does not raise any of these issues as grounds for reversal, Downing's counsel urged us at oral argument to reverse the judgment on these "due process" grounds. We decline to do so. "When reviewing a civil matter, an appellate court has no discretion to consider an issue not raised in the appellant's brief, even if the ends of justice so require." *Martinez v. El Paso County*, 218 S.W.3d 841, 844 (Tex.App. – El Paso 2007, pet. struck); s*ee also Gilbert v. City of El Paso*, 327 S.W.3d 332, 335 (Tex.App. – El Paso 2010, no pet.) ("It is the appellant's burden to properly raise and discuss the issues presented for review.").

5

We address Downing's Issue VII first because it implicates our jurisdiction over this appeal. In her seventh issue, Downing contends the judgment is not final because it is indefinite. The judgment decreed that under the terms of Vernon's will, Ruth Downing's actions caused her life estate to terminate and consequently the four children, Denise, Resa, Katrina, and Devona, now owned not only the residence, but also the 2003 Cadillac Sedan Deville, the GMC Sierra pickup, and Vernon's IRA, "or the fair market value of same ($50,000.00)." The judgment ordered that pursuant to the terms of the will, the two vehicles be sold and the IRA liquidated, and that the net proceeds of the sale and liquidation be divided equally between the four children. The judgment provided an alternative recovery: "In the event the vehicles have been sold to third parties and the Individual Retirement Account depleted … a judgment is hereby given to [the four children] for the fair market value of the Cadillac Deville Sedan and GMAC [sic] pickup truck in the amount of … $50,000[.]" Ruth Downing contends that this alternative recovery is vague and indefinite because it fails to specify how much will be owed if only one of the vehicles has been sold or if the IRA has been only partially depleted. Downing asserts that to be definite for finality purposes, the judgment was required to set out separate values for each vehicle and for the IRA, and set out a method to determine a lesser recovery if only one vehicle was sold or if the IRA was not completely depleted.

We apply the same rules in construing the language in a judgment as we apply in construing the language in other written documents. *Azbill v. Dallas Cnty. Child Protective Servs. Unit of Tex. Dep't of Human and Regulatory Servs.*, 860 S.W.2d 133, 136 (Tex.App. – Dallas 1993, no writ) ("Courts construe orders and judgments under the same rules of interpretation as those applied to other written instruments."). We first look to the actual

language used in the judgment to determine its meaning. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805-06 (Tex. 2012). If the language is clear and unambiguous, we look no further. *Id*. at 806. This inquiry is a question of law. *See Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014) (the interpretation of an unambiguous contract is a question of law for the court). We conclude the language in the judgment is definite and that (i) it provides for only an alternate recovery of $50,000 and not a lesser amount, and (ii) there can be an alternate recovery if, and only if, *both* vehicles have been sold *and* the IRA has been totally depleted.

To be final, a judgment must be definite. *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985). The judgment must either sufficiently define and protect the rights of all litigants or provide a definite means of determining those rights so that the judgment can be enforced by a writ of execution without the need for additional facts. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994); *Hinde*, 701 S.W.2d at 639; *Steed v. State*, 183 S.W.2d 458, 460 (Tex. 1944). "Thus, a judgment cannot condition recovery on uncertain events, or base its validity on what the parties might or might not do post-judgment." *Hinde*, 701 S.W.2d at 639.

A judgment is final and appealable, however, even though further proceedings may be necessary in its execution or some incidental matter may still remain to be settled. *Id*. For instance, in *Hinde* the judgment awarded the wife $49,547.11, but allowed the husband a $25,000 credit if he reinstated a life insurance policy. 701 S.W.2d at 638. The Supreme Court held the judgment was definite and final because it neither conditioned nor clouded with uncertainty the rights and obligations of the parties. *Id*. at 639. And, in *Ferguson v. Ferguson*, 338 S.W.2d 945, 947-48 (Tex. 1960), the Supreme Court held a judgment that awarded the wife one-half of the

7

profits of the husband's business, but also ordered the husband to furnish a future accounting to determine the amount of the profits, was definite and final because the accounting was a ministerial act incident to the final judgment.

Likewise, the trial court's judgment in the present case is sufficiently definite for finality and appeal purposes. First, it does not condition recovery on an uncertain event or on what the parties do after judgment. Ruth Downing owes $50,000 only if the vehicles have already been sold and the IRA already depleted. Second, contrary to Downing's contention, the amount that could be owed in the alternative is not vague and indefinite. *See H.E. Butt Grocery Co. v. Bay*, 808 S.W.2d 678, 680 (Tex.App. – Corpus Christi 1991, writ denied) (if the amount awarded by the judgment cannot be determined, the judgment is interlocutory); *Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437, 440 (Tex.App. – Houston [1st Dist.] 2000, no pet.). The judgment is not ambiguous – Downing is required to pay $50,000 to the four children only if both vehicles have been sold and the IRA has been totally depleted. Under the terms of the judgment, Downing owes $50,000 only "[i]n the event the *vehicles* have been sold to third parties *and* the Individual Retirement Account depleted[.]" (Emphasis added). She is not obligated to pay $50,000 or some lesser sum if only one vehicle has been sold or if the IRA has been only partially depleted. Further, like the post-judgment accounting in *Hinde*, we conclude the determination whether both vehicles have been sold and the IRA depleted is a ministerial act incident to the final judgment. Thus, we hold the judgment is definite and final and that we have jurisdiction over this appeal. Issue VII is overruled.

*Judicial Notice*

8

In Issue III, Downing contends the trial court abused its discretion in taking judicial notice of the entire court file. At trial, Katrina's attorney requested the court to take judicial notice of Denise, Resa, and Katrina's sworn original answer, cross-claim, and counterclaim as to Ruth Downing; in response the trial court said it would "take judicial notice of all the contents of the file." Downing's brief is unclear, but she appears to argue either that the request to take judicial notice was not specific enough under the judicial notice rule, TEX.R.EVID. 201, or that the trial court took judicial notice of more than was requested. A trial court's action in taking judicial notice is reviewed for an abuse of discretion. *See Keller v. Walker*, 652 S.W.2d 542, 543 (Tex.App. – Dallas 1983, no writ). For several reasons, we conclude the trial court did not abuse its discretion.

Downing admits that Rule 201 allows the trial court to take judicial notice whether requested or not. TEX.R.EVID. 201(c) ("A court may take judicial notice, whether requested or not.") Further, it is well-settled that a trial court can properly take judicial notice of its own records and prior pleadings in the case, with or without a request of a party. *See, e.g., In re Estate of Clark*, 198 S.W.3d 273, 275 (Tex.App. – Dallas 2006, pet denied); *In re J.A.S.C.*, 430 S.W.3d 544, 545 n.2 (Tex.App. – Dallas 2014, no pet.); *Cognata v. Down Hole Injection, Inc.*, 375 S.W.3d 370, 379 (Tex.App. – Houston [14th Dist.] 2012, pet denied). Moreover, Downing was not present at trial to object. A timely and proper objection is necessary to preserve error for the improper admission of evidence. TEX.R.EVID. 103(a)(1). By failing to object at trial, Downing cannot now complain on appeal that the court erred in taking judicial notice. *See In re M.W.,* 959 S.W.2d 661, 664 (Tex.App. – Tyler 1997, writ denied) (any error from the taking of judicial notice

9

was waived by failing to object); *Abeyta v. Travelers Ins. Co.*, 566 S.W.2d 708, 710 (Tex.Civ.App. – Amarillo 1978, writ dism'd) (same).

In any event, Downing fails to explain how the trial court's action harmed her. TEX.R.APP.P. 44.1(a) (no judgment may be reversed on appeal unless the error complained of probably caused the rendition of an improper judgment). Because Downing has failed to articulate the harm, if any, caused by the trial court's action, we cannot conclude that the taking of judicial notice probably caused the rendition of an improper judgment. *See Muhs v. Whataburger, Inc.*, No. 13-09-00434-CV, 2010 WL 4657955, at *8 (Tex.App. – Corpus Christi-Edinburg Nov. 18, 2010, pet. denied)(mem. op.) (because appellant failed to articulate the harm, if any, caused by the trial court's evidentiary ruling, the court of appeals could not conclude the ruling probably caused the rendition of an improper judgment); *see also Keller*, 652 S.W.2d at 544 (in the absence of any showing that the testimony, of which judicial notice was taken, would not have disputed plaintiff's assertions, an abuse of discretion is not shown). Issue III is overruled.

## *Waste*

In Issue IV, Downing contends there is no evidence to support the cause of action for waste of estate assets. An appellate court will sustain a legal sufficiency or "no-evidence" challenge if the record shows: (1) the complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005); *Reyes v. Reyes*, __ S.W.3d ___, 2014 WL 6982243, at *1 (Tex.App. – El Paso Dec. 10, 2014, no pet.). In

10

our review, we must credit favorable evidence if a reasonable trier of fact could and disregard contrary evidence unless a reasonable trier of fact could not. *City of Keller,* 168 S.W.3d at 827; *Reyes*, 2014 WL 6982243, at *1; *Wise v. SR Dallas, LLC,* 436 S.W.3d 402, 408 (Tex.App. – Dallas 2014, no pet.). If more than a scintilla of evidence supports the challenged finding, the legal sufficiency challenge fails. *Reyes*, 2014 WL 6982243, at *1; *Wise,* 436 S.W.3d at 408.

The judgment awarded $25,000 to Denise, Katrina, Resa, and Devona because Ruth Downing as life tenant had failed to keep up the mortgage payments, taxes, and insurance on the residence and thereby committed waste as to that estate asset. Other than a general statement in her brief that Katrina provided the only testimony and only testified briefly, Downing provides no analysis of Katrina's testimony or any argument why her testimony and affidavit are insufficient to support a finding of waste. Consequently, we review the evidence solely to determine if there is any evidence Downing failed to keep up the mortgage payments, taxes, and insurance on the residence. We conclude there is some such evidence.

Waste is injury to the reversionary interest in land caused by the wrongful act of one lawfully in possession. *Lesikar v. Rappeport*, 809 S.W.2d 246, 250 (Tex.App. – Texarkana 1991, no writ). Downing does not attack on appeal the probate court's determination that Vernon's will previously admitted to probate as a muniment of title was Vernon's last will. Nor does she attack that court's determination that her life estate terminated on September 28, 2011, when she stopped living in the residence, and that under the terms of the will, the residence, and the Cadillac Sedan Deville, the GMC Sierra pickup, and Vernon's IRA were now jointly owned by Denise, Katrina, Resa, and Devona. Downing also does not controvert that the Bank filed suit to foreclose on the residence for nonpayment of the mortgage. Katrina's affidavit stated that Downing

11

vacated the residence on September 28, 2011, without notice, and defaulted on the mortgage payments, thereby "wasting an asset of the estate[.]" A reasonable inference from this evidence is that Downing's failure led to the foreclosure and loss of the residence, which was an injury to the children's reversionary interest under the will.

We hold there was more than a scintilla of evidence that Downing defaulted on the mortgage payments leading to foreclosure, and that action caused an injury to the children's reversionary interest in the residence. Thus, we conclude there was some evidence to support the trial court's finding of waste of estate assets. Issue IV is overruled.

*Waiver*

In Issue V, Downing contends that Denise, Katrina, and Resa waived their claim for damages for waste of estate assets. In particular, Downing asserts that by agreeing to the Bank's foreclosure on the residence, Denise, Resa, and Katrina waived any claim for damages for waste. We conclude that Downing cannot raise the issue of waiver on appeal because she did not plead, present, or prove waiver below.

The court granted foreclosure to the Bank on its lien on the residence, finding that the Bank, Denise, Katrina, and Resa had agreed to the foreclosure. The judgment awarded $25,000 to Denise, Katrina, Resa, and Devona because Ruth Downing as life tenant had failed to keep up the mortgage payments and thereby committed waste as to that estate asset. The $25,000 award represented the equity left in the property after considering its fair market value less the amount of the mortgage lien. Without citation to any authority, Downing argues that Denise, Katrina, and Resa should have attempted to sell the residence and pay off the Bank's lien.

12

Waiver occurs when a party either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Tenneco, Inc. v. Enterprise Prod. Co.,* 925 S.W.2d 640, 643 (Tex. 1996); *Sun Exploration & Prod. Co. v. Benton,* 728 S.W.2d 35, 37 (Tex. 1987). Waiver is ordinarily a question of fact. *Tenneco, Inc.*, 925 S.W.2d at 643. But when the facts and circumstances are admitted or clearly established, the question becomes one of law. *Id.*

Waiver, however, is also an affirmative defense. *Turner v. Turner,* 385 S.W.2d 230, 236 (Tex. 1964). Because waiver is an affirmative defense, its elements must be proven by the party who pleads it. *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 111 (Tex.App. – San Antonio 2011, pet. denied). Further, because waiver is an affirmative defense, Rule 94 of the Texas Rules of Civil Procedure requires that waiver be affirmatively pleaded, and, unless pleaded, cannot be raised for the first time on appeal. *Powell v. Powell*, 604 S.W.2d 491, 493 (Tex.Civ.App. – Dallas 1980, no writ); *Seamless Floors by Ford, Inc. v. Value Line Homes, Inc.*, 438 S.W.2d 598, 602 (Tex.Civ.App. – Fort Worth 1969, writ ref'd n.r.e.). Waiver was neither pleaded nor proven in this case and thus cannot be raised as a ground for reversal.[5] Issue V is overruled.

*Fraud Damages*

In Issue VI, Downing contends the trial court violated the one-satisfaction rule and allowed a double recovery by awarding damages for fraud because the other damages awarded are for the same injury. Under the one-satisfaction rule, there can be but one recovery for one injury, even if

---

[5] Downing is actually making a mitigation of damages argument, *i.e.*, the parties should have attempted to sell the property and pay off the mortgage in an effort to mitigate their damages. In any event, like waiver, mitigation of damages is an affirmative defense a party must plead and prove. *Smith Protective Servs., Inc. v. FedEx Nat. LTL, Inc.*, No. 05-11-00715-CV, 2013 WL 241938, at *5 (Tex.App. – Dallas Jan. 23, 2013, no pet.); *S & G Assoc. Developers, LLC v. Covington Oaks Condo. Owner's Ass'n, Inc.,* 361 S.W.3d 210, 217 (Tex.App. – El Paso 2012, no pet.); *see also Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 300 (Tex. 1997) (evidence of failure to mitigate is admissible only if the defendant pleads failure to mitigate as an affirmative defense).

there is more than one theory of liability. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006); *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991). We conclude the fraud damages awarded duplicate damages awarded elsewhere in the judgment and thus violate the one-satisfaction rule. We also conclude there is no evidence to support an award of fraud damages arising from the non-payment of rent.

According to Katrina's affidavit, Ruth Downing committed fraud by vacating the residence on September 28, 2011, without notice, and defaulting on the mortgage payments, thereby "intentionally perpetrating fraud on the remaindermen." Katrina states, however, that these actions also constituted "wasting an asset of the estate." The judgment awarded $25,000 (representing the net equity in the residence) to Denise, Katrina, Resa, and Devona because Ruth Downing as life tenant had failed to keep up the mortgage payments, taxes, and insurance on the residence and thereby committed waste as to that estate asset. We conclude that $25,000 of the fraud damages duplicated the $25,000 in damages awarded for waste of an estate asset.

Katrina's affidavit further supported the fraud finding by stating that Ruth Downing "purportedly transferred" the Cadillac Sedan Deville after Vernon's death, that Vernon could not have signed the title or transfer document, and that at the time the probate proceedings showed the owners of the vehicle were Katrina, Denise, Resa, and Devona. The judgment ordered that the two vehicles, including the Cadillac Sedan Deville, be sold pursuant to the terms of the will and that the net proceeds be divided equally between the four children. The evidence from Katrina herself valued the Cadillac Sedan Deville at $8,000. We conclude that $8,000 of the fraud damages duplicated the value of the Cadillac Sedan Deville.

Katrina's affidavit included one other act that could possibly support the remaining fraud damages – that Ruth had someone living in the house who had not paid the mortgage or rents to the estate or the remaindermen. The judgment, however, already awarded damages arising from the non-payment of the mortgage when it awarded the remaining equity in the house as damages for waste. We conclude that any fraud damages arising from the non-payment of the mortgage duplicates the waste damages already awarded. Further, as to any fraud damages arising from non-payment of rents, there is no evidence to support any such award. The record is devoid of evidence showing the amount of the rents allegedly unpaid or whether any such unpaid rents arose before or after Downing vacated the residence.

Denise, Katrina, and Resa assert that the $100,000 fraud award was for exemplary damages and thus does not duplicate any of the actual damages awarded. The judgment, however, does not designate the fraud award as exemplary damages, and in any event, exemplary damages would not be recoverable without an actual damages award for fraud. *Hancock v. Variyam*, 400 S.W.3d 59, 71 (Tex. 2013) ("Exemplary damages are not available unless a plaintiff establishes actual damages."); *Fed. Express Corp. v. Dutschmann,* 846 S.W.2d 282, 284 (Tex. 1993) (per curiam) ("Recovery of punitive damages requires a finding of an independent tort with accompanying actual damages."); TEX.CIV.PRAC.&REM.CODE ANN. § 41.004(a) (West 2015).

Accordingly, we conclude that the $100,000 in fraud damages awarded constitutes a double recovery and violates the one-satisfaction rule. We sustain Issue VI, and render judgment vacating the $100,000 award for fraud.

*Attorney's Fees*

15

In Issue VIII, Downing contends there is no evidence to support the award of $10,000 in attorney's fees to Denise, Katrina, and Resa. Downing's attack is two-fold: She asserts there is no statutory or other authority for an award of attorney's fees to Denise, Katrina, and Resa, and that in any event, no evidence was presented to prove the amount of fees incurred or whether those fees were reasonable and necessary. We agree. We find no statutory or other basis for the recovery of attorney's fees against Downing, and the record is completely devoid of any proof that $10,000 of attorney's fees was incurred or was reasonable and necessary.

The general rule in Texas is that each litigant must pay its own attorney's fees. *MBM Fin. Corp. v. Woodlands Oper. Co.*, 292 S.W.3d 660, 663 (Tex. 2009). "It has long been the rule in Texas that attorney's fees paid to prosecute or defend a lawsuit cannot be recovered in that suit absent a statute or contract that allows for their recovery." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009); s*ee Tony Gullo Motors I, L.P.,* 212 S.W.3d at 310–11 ("Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees.").

Denise, Katrina, and Resa do not cite to any statute or contract that allows the recovery of attorney's fees in this case, and we are aware of none. Their claims do not fall into the types of claims covered by the general attorney's fee statute. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 38.001 (West 2015) (allowing the recovery of reasonable attorney's fees in suits on sworn account and on oral or written contracts, among other things). The Texas Estates Code allows for the recovery of attorney's fees in certain situations. For instance, section 352.052 allows an executor, administrator, or devisee of a will to recover "reasonable attorney's fees" for defending a will. TEX.ESTATES CODE ANN. § 352.052(a, b) (West 2014). Those fees, however, are not recoverable

from the adverse party but rather "may be allowed out of the estate[.]" *Id*. at § 352.052(b). Section 352.051 allows a personal representative to recover reasonable attorney's fees necessarily incurred in connection with "the proceedings and management of the estate." *Id*. at § 352.051(2) (West 2014). But, even if the statute is applicable to a third-party proceeding, it does not specify that recovery is allowed from the adverse party, and neither Denise, nor Katrina, nor Resa were personal representatives of the estate.

Further, even when the Estates Code allows the recovery of attorney's fees, there must be evidence presented concerning the reasonableness and necessity of the services performed and the amount requested. *See Barrett v. Parchman*, 675 S.W.2d 289, 291 (Tex.App. – Dallas 1984, no writ). "Even in a non-jury trial, evidence must be presented on these issues to support an award of attorneys' fees." *Id*. We conclude there is no statutory or other basis for an award of attorney's fees and there is no evidence of the amount of fees incurred or the reasonableness and necessity of those fees. We sustain Issue VIII, and render judgment vacating the $10,000 award in attorney's fees.

## CONCLUSION

We reverse the award of $100,000 in damages for fraud and the award of $10,000 in attorney's fees and render a take-nothing judgment as to those damages and fees. Otherwise, we affirm the judgment.

STEVEN L. HUGHES, Justice

February 25, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.