ACCEPTED
15-24-00133-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/22/2025 2:03 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00133-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/22/2025 2:03:53 PM
CHRISTOPHER A. PRINE
Clerk

IN THE FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS

Insight Investments, LLC,

*Appellant,*

v.

Stonebriar Commercial Finance LLC,

*Appellee.*

On Appeal from the 380th District Court, Colin
County, Texas Trial Court Cause No. 380-06242-2022
Honorable Benjamin N. Smith, presiding

## APPELLEE'S BRIEF IN OPPOSITION TO APPELLANT'S MOTION TO REVIEW AND EMERGENCY MOTION FOR TEMPORARY RELIEF

LeElle B. Slifer
State Bar No. 24074549
Dylan French
State Bar No. 24116393
**WINSTON & STRAWN LLP**
2121 North Pearl St., Ste 900
Dallas, Texas 75202
Telephone: (214) 453-6500
Facsimile: (214) 453-6400
lslifer@winston.com
dfrench@winston.com

*Attorneys for Plaintiff/Appellee*
*Stonebriar Commercial Finance LLC*

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................1

BACKGROUND ...............................................................................2

    A.    To Induce Stonebriar to Give It a Five-Million Dollar Loan, Insight Agrees to Provide a Specific Waiver and Agrees to a Specific Repurchase Obligation If It Fails to Provide That Waiver...............2

    B.    While Conceding It Failed to Provide the Waiver, Insight Refuses to Honor Its Repurchase Obligation and So Stonebriar Sues................................4

    C.    The Trial Court Enters Final Judgment on Stonebriar's More Than Five-Million Dollar Claim—Which Insight Attempts to Unilaterally Supersede by Posting Only a $500 Bond.......................5

    D.    The Trial Court Sets a Supersedeas Amount of $5,903,679.08 Based on *Uncontroverted* Evidence as to the Amount That Would Be Required For Insight To Perform Its Repurchase Obligation.............6

    E.    Insight Files a Gish Gallop Motion for Review, Asking This Court to Enter a Nominal Supersedeas Amount Largely On the Basis of Its View of the Merits of Its Appeal. ...................................7

ARGUMENT ...................................................................................8

    I.    This Court Should Deny Insight's Motion to Review Because It Improperly Seeks to Reduce Its Supersedeas Amount Based on the Supposed of Merits of Its Appeal........8

    II.    To the Extent Insight Makes a Half-Hearted Attempt to Actually Argue the Supersedeas Order (Rather Than the Merits), Its Efforts Fail.........................12

    A.    Supersedeas Orders are Reviewed Under an Abuse of Discretion Standard................12

    B.    The Trial Court Acted Within Its Sound Discretion In Setting The Supersedeas Bond. ..............13

1. A Trial Court May Set a Supersedeas Bond for a Non-Monetary Award in the Amount That Would Be Required to Place the Judgment Creditor in Its Awarded Position..........................13

2. The Trial Court's Supersedeas Order is Reasonably Calibrated to Place Stonebriar in Its Awarded Position in the Event Insight Does Not Perform................................................15

3. Insight's Waived Its Objections to the Wilkinson Declaration and—Even if Preserved—the Objections Are Meritless. .........18

C. Any Error That the Trial Court Committed Would in any Case Be Harmless..........................................20

III. This Court Should Deny Insight's Emergency Motion for a Temporary Stay................................................21

PRAYER ........................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ahlgren v. Ahlgren,*
No. 13-22-29-CV, 2022 WL 1260190 (Tex. App.—Corpus
Christi Apr. 25, 2022, no pet.) ........................................................... 11

*BP Am. Prod. Co. v. Red Deer Res., LLC,*
No. 07-14-00032-CV, 2014 WL 3419496 (Tex. App.—
Amarillo July 11, 2014, order) ....................................................... 8, 20

*Carter Real Est. & Dev., Inc. v. Builder's Serv. Co.,*
718 S.W.2d 828 (Tex. App.—Austin 1986, no writ) .......................... 16

*EIS Dev. II, LLC v. Buena Vista Area Ass'n,*
668 S.W.3d 696 (Tex. App.—El Paso 2022, no pet.)............... 14, 15, 16

*In Matter of Est. of Downing,*
461 S.W.3d 231 (Tex. App.—El Paso 2015, no pet.).......................... 10

*Ferguson v. Ferguson,*
161 Tex. 184 (1960) ........................................................................... 10

*Haedge v. Cent. Texas Cattlemen's Ass'n,*
603 S.W.3d 824 (Tex. 2020) ......................................................... 12, 17

*In re J.W.,*
No. 2-5-287-CV, 2006 WL 1030191 (Tex. App.—Fort
Worth Apr. 20, 2006, no pet.) ........................................................... 18

*Point Lookout W., Inc. v. Whorton,*
742 S.W.2d 277 (Tex. 1987) ............................................................. 12

*Qatar Foundation v. Paxton,*
No. 3-20-129-CV, 2020 WL 6269267 (Tex. App.—Austin
Oct. 22, 2020, order)..................................................................... 15, 16

*Reyna v. State,*
168 S.W.3d 173 (Tex. Crim. App. 2005) ........................................... 18

*In re State Bd. for Educator Certification*,
452 S.W.3d 802 (Tex. 2014) ................................................................ 8

*State v. Lain*,
349 S.W.2d 579 (Tex. 1961) ............................................................. 12

*Waterford Lago Vista, LLC v. Waterford Dev. Partners, L.P.*,
No. 3-24-27-CV, 2024 WL 3207528 (Tex. App.—Austin
June 28, 2024, no pet.) ............................................................. *passim*

## Other Authorities

Security, Black's Law Dictionary (11th ed. 2019) ................................ 16

Tex. R. App. P. 24 ............................................................... 8, 9, 13

Tex. R. App. P. 33.1 ................................................................. 18

# INTRODUCTION

This Court should deny Insight's Motion to Review Supersedeas Order, and its concurrently filed Emergency Motion for Temporary Relief. Insight's challenge to the Trial Court's Supersedeas Order is meritless on its face and, for the same reason, Insight has failed to show any basis to stay the Trial Court's manifestly sound order.

This dispute traces back to a simple, one-page contract, and an obvious breach of that contract. After more than a year of litigation during which Insight conducted almost no discovery, the Trial Court entered Final Judgment awarding Stonebriar the repurchase remedy to which it is entitled under that contract. While Insight attempted to unilaterally supersede enforcement by posting a mere *$500*, the uncontroverted evidence established it would cost at least *$5,903,679.08* to put Stonebriar in its awarded position. Since it is a basic tenet that a trial court may secure a judgment creditor by setting a supersedeas bond in the amount necessary to place the judgment creditor in its awarded position, the Trial Court here acted squarely within its discretion by setting a supersedeas bond in such an amount. Insight's Motion does not come close to showing otherwise.

Indeed, recognizing that it cannot credibly challenge the Trial Court's supersedeas order based on considerations appropriate to that inquiry, Insight falls back on simply arguing the merits of its appeal. But under Texas law, this is *not* a proper basis for reducing a supersedeas, and thus courts have dismissed motions to review on this threshold ground alone. Insight's Motion should meet the same fate here.

Accordingly, for the reasons set forth here, Stonebriar respectfully requests that this Court deny Insight's Motions and sustain the Trial Court's Order Setting Supersedeas Amount, leaving it undisturbed and in effect.

<u>BACKGROUND</u>

A.    **To Induce Stonebriar to Give It a Five-Million Dollar Loan, Insight Agrees to Provide a Specific Waiver and Agrees to a Specific Repurchase Obligation If It Fails to Provide That Waiver.**

Insight's Motion for Review traces back to a clear and unambiguous contract, which Insight drafted itself (the "Repurchase Letter"). 1CR269. The Repurchase Letter called for Stonebriar to provide Insight with a loan in the amount of $5,010,998.00 evidenced by a promissory note. It also called for Insight, in turn, to deliver certain original documentation (at issue here, the "Landlord Waiver") to Stonebriar's office. As is not in

dispute, while Stonebriar timely provided Insight with the loan described in the Repurchase Letter, Insight failed to deliver the contractually required original documentation to Stonebriar. See Motion for Review at 5 (conceding "Insight was not able to obtain a signed copy of one of these documents, the 'Landlord Waiver'" at the relevant time).

The Repurchase Letter—which contained no cure provision—provided that, in the event Insight fails to deliver the original Landlord Waiver to Stonebriar, then "Insight, at [Stonebriar's] sole discretion, shall repurchase the Equipment Lease Agreement for the principal outstanding of the Promissory Note," "accrued interest," and "all costs of collection including attorney's fees." 1CR269.

Insight failed to provide the Landlord Waiver. So, on October 14, 2022—after weeks of Stonebriar repeatedly demanding that Insight tender that waiver without any action from Insight—Stonebriar eventually demanded that Insight repurchase the Equipment Lease Agreement, consistent with the plain and unambiguous language of Repurchase Letter. 1CR278–80. At the time, as stated in Stonebriar's demand, this would have required Insight to pay Stonebriar $4,841,021.72, plus daily interest of $1,315.17. *Id.*

B. **While Conceding It Failed to Provide the Waiver, Insight Refuses to Honor Its Repurchase Obligation and So Stonebriar Sues.**

While conceding it had failed to provide the Landlord Waiver, and without disputing Stonebriar's calculations of what it would cost to discharge its repurchase obligation, Insight simply refused to comply, contending (wrongly) that Stonebriar had not been harmed. 1CR14–22; Motion for Review at 6 (conceding that Insight did not provide the Landlord Waiver but nonetheless declined to repurchase the lease agreement).

Given the intransigence of Insight's position, soon thereafter Stonebriar filed suit for breach of contract and attorneys' fees. 1CR14–22. And Stonebriar quickly moved for summary judgment in light of the simplicity of the issues raised and the lack of any real dispute as to the facts. Rather than address Stonebriar's arguments, however, Insight requested a continuance, claiming it needed to conduct extensive discovery.

Insight, however, proceeded to do next to nothing for a year. Insight took no depositions, and it failed to issue any additional written discovery until after close of business on the last possible day to do so. Accordingly,

in March 2024, Stonebriar renewed its traditional motion for summary judgment.  1CR235–344.  And on May 6, 2024, the Trial Court granted Stonebriar's motion in its entirety.  After denying Insight's motions for rehearing and new trial, the Trial Court entered final judgment in Stonebriar's favor (the "Final Judgment") on September 16, 2024. 1CR1021–23.

### C.  The Trial Court Enters Final Judgment on Stonebriar's More Than Five-Million Dollar Claim—Which Insight Attempts to Unilaterally Supersede by Posting Only a <u>$500 Bond</u>.

As part of the Final Judgment, the Trial Court ordered Insight "to repurchase the Equipment Lease Agreement pursuant to the terms of the Repurchase Letter."   1CR1021.   The Final Judgment also awarded Stonebriar its requested attorneys' fees, including conditional appellate attorneys' fees.  *Id.*  After entry of Final Judgment, Insight filed a second motion for new trial, which largely mirrored its first and was overruled by operation of law.

Having exhausted its post-judgment options, Insight noticed its appeal.  Yet even though judgment had been entered against Insight on a more than five-million dollar claim, Insight purported to unilaterally

supersede enforcement of that judgment by depositing $500 with the Trial Court on December 23, 2024. *See* Motion for Review, Exhibit B.

> **D.** **The Trial Court Sets a Supersedeas Amount of $5,903,679.08 Based on *Uncontroverted* Evidence as to the Amount That Would Be Required For Insight To Perform Its Repurchase Obligation.**

In response to the patently insufficient deposit, Stonebriar filed a Motion to Set Supersedeas Amount on December 31, 2025. Motion to Review, Exhibit C. Stonebriar asked that the Trial Court set a supersedeas bond in the amount that would be required for Insight to repurchase the Equipment Lease Agreement (as it was ordered by the Final Judgment). *Id.* at 6.

In this case, the calculation of the amount required for Insight to repurchase the Equipment Lease Agreement is a ministerial act requiring nothing more than basic arithmetic—namely, applying the daily interest called for in the Promissory Note to the amounts outstanding under the underlying loan. Stonebriar submitted testimony by Jeffrey L. Wilkison as to the result of that ministerial calculation. *See* Motion to Review, Exhibit C, at pg. 23–25 (Declaration of Jeffrey L. Wilkison). Mr. Wilkinson testified that, as of December 31, Insight would need to pay $5,903,679.08 to repurchase the Equipment Lease

6

Agreement, excluding fees and costs.[1]

On January 6, 2025, the trial Court ordered Insight to post a supersedeas bond in the amount of $5,903,679.08. *See* Motion to Review, Exhibit D. This was equal to the amount Stonebriar initially demanded on October 14, 2022 ($4,841,021.72), plus the $1,062,657.36 in contractually agreed-upon interest that Insight had accrued as of December 31, 2024.

Prior to the Court's January 6 Order setting a supersedeas amount, Insight did not file any objections or an opposition to Stonebriar's Motion, including, to Mr. Wilkinson's declaration. Instead, Insight filed a late and by-then moot response to Stonebriar's Motion to Set Supersedeas Amount on January 13, 2025, after the Order had been entered.

### E. Insight Files a Gish Gallop Motion for Review, Asking This Court to Enter a Nominal Supersedeas Amount Largely On the Basis of Its View of the Merits of Its Appeal.

On January 16, 2025, Insight filed a Motion for Review with this

---

[1] Mr. Wilkinson was the Senior Vice President and Chief Risk Officer of Stonebriar at all relevant times. And, as he averred, in this role, he was responsible for the full range of managerial duties including underwriting, documentation, collection and recovery. He thus he had personal knowledge of the loan to Insight, in which he was directly involved, and, indeed, it was Mr. Wilkinson who prepared the original repurchase demand that set forth the outstanding amounts at issue in this repurchase obligation. *See* Motion to Review, Exhibit C, at pg. 23–25 (Declaration of Jeffrey L. Wilkison).

Court, effectively asking this Court to reduce the supersedeas amount by 1/10,000—from almost $6 million to $500. On the same basis, it also filed an emergency Motion to Stay pending this Court consideration of the Motion to Review.

Insight's Motion largely argues the merits of its appeal, going so far as to suggest that nothing more than a nominal supersedeas amount is appropriate "[u]ntil a court of last resort affirms Stonebriar's right to demand this kind of 'specific performance.'" Motion for Review at 8. Put differently, Insight is trying to back-door litigate its entire appeal through this emergency motion regarding the supersedeas amount.

ARGUMENT

I. <u>This Court Should Deny Insight's Motion to Review Because It Improperly Seeks to Reduce Its Supersedeas Amount Based on the Supposed of Merits of Its Appeal.</u>

"The merits of an appeal are not addressed through a rule 24 review." *BP Am. Prod. Co. v. Red Deer Res., LLC*, No. 07-14-00032-CV, 2014 WL 3419496, at *2 (Tex. App.—Amarillo July 11, 2014, order). As the Texas Supreme Court has recognized, because "the merits of the underlying appeal are not before us," when reviewing a supersedeas ruling appellate courts are to "deal solely" with the considerations specific to a supersedeas bond. *In re State Bd. for Educator Certification*,

452 S.W.3d 802, 803 (Tex. 2014). Otherwise, if a judgment debtor could simply invoke the supposed merits of its appeal as a basis for justifying a nominal supersedeas amount—all supersedeas amounts would end up nominal, or courts of appeals would have to hear the merits of every appeal in order to decide a supersedeas bond, flipping the rule 24 review procedure on its head. Insight effectively concedes this is precisely its end game here, when it suggests "the Court might want to carry the supersedeas motion with the case inasmuch as the impossibility of complying with the final judgment affects both the amount of the bond and the validity of the judgment on the merits." Motion for Review at 30.

Here, the heart of Insight's Motion to Review is the argument that this Court should modify the supersedeas amount from $5,903,679.08 to $500 because the Final Judgment is unsound, indefinite, and vitiated by a third-party bankruptcy proceeding that was not initiated until after Stonebriar filed suit. *See, e.g.*, Motion to Review at 2 ("To ward off any attempts by Appellee Stonebriar Commercial Finance, LLC to 'collect' *on such a flawed judgment*, Insight deposited $500 with Collin County.") (emphasis added); *see id.* at 19–23 (detailing various objections to the Final Judgment and discussing Legacy's bankruptcy).

9

Insight's strategy misses the mark, because the issue in a motion to review a supersedeas ruling is the specificity and soundness of the *supersedeas order*, not the final judgment. Here, Insight does not even argue the Supersedeas Order is insufficiently specific; nor could it, as the amount it sets is precise and ascertainable. *See* Exhibit D to Motion for Review. And any challenge that Insight may have to the definiteness of the Final Judgment (and Stonebriar maintains it has no valid challenge) concern the merits of Insight's appeal (not the soundness of the supersedeas ruling).[2] Indeed, Insight itself admits that "the lack of specificity . . . is one of the points Insight made in its arguments to this Court and in its Motion for New Trial/Motion for Reconsideration." *Id.* at 19.

---

[2] Insight's challenge to the definiteness of Final Judgment case is frivolous on its face. It is well-settled that a judgment is final and appealable "even though further proceedings may be necessary in its execution or some incidental matter may still remain to be settled." *In Matter of Est. of Downing*, 461 S.W.3d 231, 238 (Tex. App.— El Paso 2015, no pet.). For example, "the Supreme Court held a judgment that awarded the wife one-half of the profits of the husband's business, but also ordered the husband to furnish a future accounting to determine the amount of the profits, was definite and final because the accounting was a ministerial act incident to the final judgment." *Id.* (*citing Ferguson v. Ferguson*, 161 Tex. 184 (1960)).

This is the case here. The Final Judgment ordered Insight to "repurchase the Equipment Lease Agreement pursuant to the terms of the Repurchase Letter." To the extent it remained necessary to undertake an accounting of what it would cost to repurchase the Equipment Lease Agreement (based on ascertaining the outstanding balance and applicable interest rate)—this is precisely the kind of "ministerial act incidental to the final judgment" that does not detract from finality.

Likewise, Insight's argument that the bankruptcy of a third-party (Legacy) somehow renders it impossible for Insight to pay the supersedeas amount is a head-scratcher. Insight does not explain how *Legacy's* bankruptcy affects *Insight's* ability to pay the supersedeas amount. And more fundamentally, whatever collateral effect or defense Insight might believe follows from that bankruptcy (and Stonebriar maintains there are none), this would in any case, again, relate to the merits of Insight's appeal,[3] *not* the soundness of the Trial Court's supersedeas ruling.

Thus, Courts have rejected out of hand motions such as Insight's that rely on the merits of the appeal to challenge a supersedeas order. *Ahlgren v. Ahlgren*, No. 13-22-29-CV, 2022 WL 1260190, at *6 (Tex. App.—Corpus Christi Apr. 25, 2022, no pet.) ("Accordingly, we view appellants' complaints about the scope of the post-judgment injunction as a premature challenge to the merits of the permanent injunction, and

---

[3] Insight's invocation of the bankruptcy court's rejection of the Equipment Lease Agreement and disposal of the equipment is also striking in its sheer cynicism, as Insight itself negotiated these events. A party may not bring about a state of affairs and then excuse its non-performance by pointing to that state of affairs.

we decline to reach those arguments at this time.").  This Court should do the same here.

## II. To the Extent Insight Makes a Half-Hearted Attempt to Actually Argue the Supersedeas Order (Rather Than the Merits), Its Efforts Fail.

### A. Supersedeas Orders are Reviewed Under an Abuse of Discretion Standard.

This Court reviews a trial court's supersedeas ruling for an abuse of discretion.  *See, e.g.*, *State v. Lain*, 349 S.W.2d 579, 586 (Tex. 1961) (affirming lower court's supersedeas ruling on the ground "the trial judge did not abuse his discretion in fixing the amount of the supersedeas bond at $7,500").  "Under an abuse of discretion standard, the reviewing court defers "to the trial court's factual determinations if they are supported by evidence, but review legal determinations de novo."  *Haedge v. Cent. Texas Cattlemen's Ass'n*, 603 S.W.3d 824, 827 (Tex. 2020).[4]

Here, Insight does not come close to showing that the Trial Court was outside of its discretion by entering the Supersedeas Order.

---

[4] Further, when as here a trial court issues an order without specific findings of fact, on review, "all questions of fact [are] presumed found in support of the judgment." *Point Lookout W., Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987).

**B. The Trial Court Acted Within Its Sound Discretion In Setting The Supersedeas Bond.**

As shown below, a trial court acts within its sound discretion if (for an award of specific performance) it sets a supersedeas bond in the amount it would cost to place the judgment creditor in the awarded position. Here, that amount was *at least* $5,903,679.08. Accordingly, the Trial Court clearly acted within its sound discretion.

**1. A Trial Court May Set a Supersedeas Bond for a Non-Monetary Award in the Amount That Would Be Required to Place the Judgment Creditor in Its Awarded Position.**

When a judgment is for non-monetary[5] relief, "the trial court must set the amount and type of security that the judgment debtor must post." Tex. R. App. P. 24.2(a)(3). While the Court has considerable discretion as to the type and amount of security, "the security must adequately protect the judgment creditor against the loss or damage that the appeal might cause." Tex. R. App. P. 24.2(a)(3). The "loss or damage that an

---

[5] The Court's Final Judgment orders Insight to "repurchase the Equipment Lease Agreement" from Stonebriar "pursuant to the terms of the Repurchase Letter." Because this calls for Insight to specifically perform under a contract, the nature of judgment is non-monetary, even if the effect could be said to be monetary. *See Waterford Lago Vista, LLC v. Waterford Dev. Partners, L.P.*, No. 3-24-27-CV, 2024 WL 3207528, at *1–*2 (Tex. App.—Austin June 28, 2024, no pet.) (reasoning that a judgment requiring the judgment debtor to specifically perform by reducing the price of a contract falls under Rule 24.2(a)(3)).

appeal might cause" has been held to include the cost of placing the judgment creditor to the position it was awarded (in the event the judgment debtor does not comply with the judgment). *See EIS Dev. II, LLC v. Buena Vista Area Ass'n*, 668 S.W.3d 696, 699 (Tex. App.—El Paso 2022, no pet.).

In *EIS,* the trial court enjoined a developer from building in certain ways and set the supersedeas bond in the amount it found would "restor[e] the land from any development in violation of the deed restriction." *EIS*, 668 S.W. at 699. The Court of Appeals affirmed, rejecting the judgment debtor's argument that "future cost of restoration is not a proper measure of damages for setting a supersedeas bond." *Id.* at 703.

Likewise, in *Waterford Lago Vista,* the Court held that $820,000 was an appropriate supersedeas amount for a judgment ordering the judgment debtor to specifically perform by reducing the price of a contract by $817,00. *See* 2024 WL 3207528, at *2 ("[W]e conclude that the trial court did not abuse its discretion in setting the supersedeas bond at $820,000.").

Thus, under *EIS* and *Waterford,* a trial court enjoys the discretion to secure a judgment creditor by setting a supersedeas bond in the amount necessary to place the judgment creditor in its awarded position (in the event the judgment debtor does not perform).

> ### 2. The Trial Court's Supersedeas Order is Reasonably Calibrated to Place Stonebriar in Its Awarded Position in the Event Insight Does Not Perform.

In the event that Stonebriar prevails upon its appeal and Insight does not perform, the cost of placing Stonebriar in its awarded position would be at least $5,903,679.08 plus $1,315.17 in daily interest for every day since December 31, 2025 (as well and attorneys' fees and other costs). Thus, by setting the supersedeas bond at $5,903,679.08, the Trial Court acted well within its discretion under *EIS* and *Waterford.*

Insight's invocation of *Qatar Foundation v. Paxton*, does not show otherwise. No. 3-20-129-CV, 2020 WL 6269267, at *3 (Tex. App.—Austin Oct. 22, 2020, order). At issue there was a judgment requiring disclosure of information in a PIA case. The Court of Appeals allowed the judgment debtor to supersede enforcement (i.e., delay the attorney general from disclosing the information) by posting a nominal amount. But there, the Court of Appeals found there was no harm to the judgment creditor

stemming from non-disclosure and no quantifiable costs associated with placing the judgment creditor to its awarded position.[6]  Here, in contrast, as in *EIS* and *Waterford,* there are quantifiable costs associated with placing Stonebriar in its awarded position and they are far from nominal.  Thus, this case does not fall under *Qatar Foundation* but rather *EIS* and *Waterford.*

Insight's suggestion that a nominal award is required here would not even satisfy the definition of a "security" and would contradict "the purpose of the supersedeas bond"—which is "to secure the appellee" by providing it with recourse to collateral in exchange for "abat[ing] the remedies [the appellee] would otherwise have for realizing on his judgment." *Carter Real Est. & Dev., Inc. v. Builder's Serv. Co.*, 718 S.W.2d 828, 830 (Tex. App.—Austin 1986, no writ).  A security is "pledged to guarantee the fulfillment of an obligation."  Security, Black's Law Dictionary (11th ed. 2019).  Here, Insight does not even attempt to show

---

[6] *Qatar Foundation* is also inapposite because the trial court there declined to allow enforcement of the judgment to be suspended altogether.  The Court of Appeals set aside that ruling on the ground—unique to the PIA context—that "the trial court does not have discretion to refuse to supersede a judgment that would require production of information in a PIA case because once requested information is produced, an appeal is moot." *Qatar Foundation*, 2020 WL 6269267, at *3.  Here, the Trial Court did not deny Insight an opportunity to supersede enforcement, nor has Insight shown how the supersedeas award would moot its appeal.

how pledging $500 could guarantee fulfillment of Insight's obligation under the Final Judgment, sufficient to warrant abating enforcement of the judgment.

Finally, Insight's invocation of *Haedge v. Central Texas Cattlemen's Ass'n*, also misses the mark. 603 S.W.3d 824, 825–28 (Tex. 2020). While Insight is correct that the Court there held that a supersedeas bond should not be based on the potential benefit to the judgment debtor (but rather the potential harm to the judgment creditor), Insight is incorrect that the Trial Court's Order violates this principle. Here, the supersedeas amount is based on the potential harm to Stonebriar (namely, the harm to Stonebriar from Insight failing to perform). That this amount may also be equivalent to the benefit that would accrue to Insight in the event of non-performance, of course, does not run afoul of *Haedge,* as its principle is implicated only when (as in *Haedge*) the benefit to the judgment debtor is ***distinct from*** the harm to the judgment creditor.[7]

---

[7] To apply *Haedge* when as here the two categories are not distinct would be absurd. It would mean that there was no permissible supersedeas amount. If looking to the benefit to the judgment debtor is per se disallowed, and looking to the harm to the judgment creditor is disallowed because it is equivalent to the benefit to the judgment debtor, there would be nothing to ever look to in setting a supersedeas amount—a patently absurd result.

### 3. Insight's Waived Its Objections to the Wilkinson Declaration and—Even if Preserved—the Objections Are Meritless.

Insight's evidentiary objections to the Wilkinson declaration also miss the mark for several reasons.

*First*, Insight's objections were waived. "To preserve error in the admission of evidence, a party must make a proper objection and get a ruling on that objection." *In re J.W.,* No. 2-5-287-CV, 2006 WL 1030191, at *1 (Tex. App.—Fort Worth Apr. 20, 2006, no pet.). Here, Insight did neither. As Insight concedes, far from filing a timely objection and obtaining a ruling, it filed its objections on January 13, 2025—*after* the trial court had already ruled, on January 6, 2025, on Stonebriar's Motion to Set Supersedeas Bond.

*Second*, to the extent this Court were to indulge Insight's waived objections, it would be to no avail, as the objections are simply boilerplate and blunderbuss, announcing that the "the declaration of Jeffrey L. Wilkison is wholly irrelevant, conclusory, and inadmissible" and that it is "hearsay in its entirety." Such objections are without power to preserve (or assign) error. *See* Tex. R. App. P. 33.1 (objections must be specific); *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (even a

18

constitutional complaint under the Confrontation Clause can be waived if the objection is not sufficiently specific).

*Third*, Insight's objections also mischaracterize Mr. Wilkinson's testimony. Insight asserts that "Wilkinson's declaration does not offer any evidence or opinions . . . on the only relevant issue at hand—the amount of 'monetary or material losses ascertainable by proof' that Stonebriar will suffer (if any) by Insight staying execution on the final judgment during the pending appeal." But this is demonstrably false. The loss that might be caused by an appeal includes the cost of placing Stonebriar in its awarded position in the event Insight does not perform. This is precisely what Mr. Wilkinson's testimony addresses and is thus plainly relevant.

*Fourth*, Insight takes aim at a strawman. It complains that "Wilkison has not shown himself qualified to form an opinion on the legal meaning of the terms at issue." But Mr. Wilkinson never purports to opine on the legal meaning of terms and Insight does not point to where specifically Mr. Wilkinson opines on legal issues. Nor could it. Mr. Wilkinson testified as to the results of undertaking the ministerial task of calculating the outstanding amounts and applies the appropriate

interest to them to determine the amount that would be required to place Stonebriar in its awarded position. Given that Mr. Wilkinson was the Senior Vice President and Chief Risk Officer of Stonebriar at all relevant times, was responsible for the full range of managerial duties related to the transactions at hand including underwriting, documentation, collection and recovery, and had personal knowledge of the loan to Insight, Mr. Wilkinson was plainly qualified and competent to undertake this. *See* note 1, *supra.*

In short, a reviewing court may not substitute its discretion for that of the trial court. The trial court is the sole judge of the credibility and weight of testimony. *Red Deer Res.*, 2014 WL 3419496, at *4. Here, the Trial Court was well within its discretion to credit Mr. Wilkinson's testimony.

## C. Any Error That the Trial Court Committed Would in any Case Be Harmless.

The Motion to Review apparently takes umbrage at the suggestion that the Trial Court's Final Judgment is a non-monetary judgment. *See* Motion to Review at 1,7. While, as noted, Texas law treats an award of specific performance as non-monetary in nature (even if it may have a monetary effect), *see Waterford Lago Vista*, 2024 WL 3207528, at *1–*2,

Insight's objection is ultimately self-defeating.

To the extent that the specific performance award is understood as monetary because of its effect, this would hardly justify a nominal bond in the amount of $500. On the contrary, the exact opposite would follow. A money judgment is required to be in the amount of the non-punitive component of the award—subject to a cap of the lesser of 50% of the judgment debtor's net worth or $25 million. Here, no portion of the $5,903,679.08 was punitive, and Insight has not established that the supersedeas amount exceeds 50% of its net worth. Thus, to the extent the Final Judgment should not be considered non-monetary (and Stonebriar maintains it should be), this would simply furnish an independent basis for sustaining the Trial Court's ruling (not a basis for disturbing it).

III. <u>This Court Should Deny Insight's Emergency Motion for a Temporary Stay</u>

While courts may stay enforcement of a judgment pending consideration of a motion for review of a supersedeas order, when as here the motion for review is meritless on its face, there is no need for a stay.

Accordingly, for the same reasons that Insight's Motion for Review fails, as discussed above, this Court should also deny Insight's Emergency Motion for a stay of enforcement.

<u>**PRAYER**</u>

Stonebriar respectfully requests that this Court deny Insight's Motion to Review, in its entirety; sustain the Trial Court's sound Supersedeas Order, including its requirement that Insight post a supersedeas bond or deposit in the amount of $5,903,679.08; deny Insight's Emergency Motion for Temporary Relief, in its entirety; and order any other and further relief to which Stonebriar may show itself entitled.

Dated: January 22, 2025

*/s/LeElle Slifer*
LeElle Slifer
State Bar No. 24074549
Dylan French
State Bar No. 24116393
**WINSTON & STRAWN LLP**
2121 North Pearl St., Ste 900
Dallas, Texas 75202
Telephone: (214) 453-6500
Facsimile: (214) 453-6400
lslifer@winston.com
dfrench@winston.com

*Attorneys for Plaintiff/Appellee Stonebriar Commercial Finance LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on January 22, 2025 to all counsel of record via E-Filing.

*/s/ Dylan French*
Dylan French

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sarah Shelby on behalf of LeElle Slifer
Bar No. 24074549
SShelby@winston.com
Envelope ID: 96478755
Filing Code Description: Response
Filing Description: Appellee's Brief in Opposition to Appellant's Motion to Review and Emergency Motion for Temporary Relief
Status as of 1/22/2025 2:37 PM CST

Associated Case Party: Stonebriar Commercial Finance, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Rachel H.Stinson | | stinson@wrightclosebarger.com | 1/22/2025 2:03:53 PM | SENT |
| Thomas C.Wright | | wright@wrightclosebarger.com | 1/22/2025 2:03:53 PM | SENT |

Associated Case Party: Insight Investments, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| LeElle Slifer | 24074549 | lslifer@winston.com | 1/22/2025 2:03:53 PM | SENT |
| Dylan French | | dfrench@winston.com | 1/22/2025 2:03:53 PM | SENT |